[No. H013272. Sixth Dist. Dec. 1, 1995.]

GARY LORENZ et al., Plaintiffs and Appellants, v.
COMMERCIAL ACCEPTANCE INSURANCE CO., Defendant and
Appellant.

## COUNSEL

Flynn & Rose, Steven W. Murray and Robert J. Filippi for Plaintiffs and Appellants.

Quinn, Kully & Morrow, Lawrence A. Cox, Brian K. Condon and Lisa S. Kantor for Defendant and Appellant.

## OPINION

ELIA, J.—Plaintiffs Gary Lorenz and Mary Ross appeal after the trial court vacated a $2,250,000 default judgment against defendant Commercial Acceptance Insurance Co. (hereafter, CAIC). (Code Civ. Proc., § 473.)

Plaintiffs contend the trial court erred in vacating the default judgment.[1] For reasons we shall explain, we conclude the trial court did not err. We will therefore affirm the judgment.

*Facts and Procedural Background*

Mary Ross was injured when she lost control of her vehicle while driving on a road improved for Holiday Estates Maintenance Association (hereafter, Holiday) by Gary Lorenz, doing business as Lorenz Construction and Paving Company (hereafter, Lorenz Construction). Lorenz was insured by CAIC, a nonadmitted alien insurer domiciled in Barbados.

Ross sued Lorenz for her injuries. Lorenz tendered defense of the action to CAIC, who refused to defend, claiming noncoverage.

The case went to judicial arbitration. The arbitrator found Holiday negligent, and Ross 50 percent comparatively negligent. The arbitrator absolved Lorenz from any liability, finding no negligence on Lorenz's part. The arbitrator awarded Lorenz his costs of suit. Ross rejected the arbitration award and requested trial de novo.

The day after the arbitrator made his determination, Lorenz entered into an agreement with Ross, pursuant to which, in exchange for a covenant by Ross not to enforce any judgment against Lorenz, Lorenz assigned to Ross his rights against CAIC. Ross also settled with Holiday for $200,000.

The trial against Lorenz was unopposed, and resulted in a damage award of $2,120,551 to Ross.

Ross instituted the present action against CAIC to enforce the rights which Lorenz had assigned to her, and to collect judgment. Lorenz joined the action, alleging personal tort damages for bad faith and malpractice. CAIC answered the complaint.

---

[1]CAIC filed a protective cross-appeal claiming the amount of damages awarded to plaintiffs is excessive. CAIC further contends the insurance policy issued to Lorenz did not cover Ross's claim. Since we affirm the trial court's order vacating the default and default judgment, we need not address the contentions raised in CAIC's cross-appeal.

Following discovery, plaintiffs moved to require CAIC to post a $3 million security bond pursuant to Insurance Code section 1616.[2]

CAIC's counsel (hereafter Counsel) did not oppose the motion, or inform CAIC of the motion. Counsel did inform Shauna Silva and Curt Hagan of Loss Management Professionals, Inc. (LMP). LMP was CAIC's independent claims adjuster. Counsel repeatedly told Silva and Hagan that he had the matter under control.

On April 19, 1994, the trial court ordered CAIC's answer stricken, and also ordered CAIC to post a $2.5 million security bond within 10 days. The court's order also stated that upon posting of the bond CAIC's answer would be automatically reinstated.

Counsel subsequently approved the April 19, 1994, order requiring that CAIC's answer be stricken and that CAIC post the bond within 10 days.

On April 19, 1994, Hagan was asked by his employer, Silva, to contact Counsel about the status of the matter. Hagan was unsuccessful in reaching Counsel. Hagan then contacted plaintiffs' counsel, and was told "there was a default" and "the file was a mess." Hagan called plaintiffs' cocounsel and was told "there was a default" and "[a] bond had been ordered."

On April 21, 1994, Hagan reached Counsel. Counsel told Hagan that plaintiffs' counsel wanted a $2.5 million bond and wanted it posted within the next 10 days. Counsel said plaintiffs' counsel was "88 percent hot air." Counsel said the amount was too high and the time was too short. Counsel assured Hagan that he would get an extension of time and a reduction in the bond to a "reasonable amount." Counsel also stated that he would survey the market for bond availability. Counsel did not suggest that Hagan or CAIC should attempt to get the bond. Instead, Counsel told Hagan to "sit tight."

On April 25, Counsel obtained an extension of time until May 6, 1994, to post the bond. Counsel obtained another extension until May 20, 1994. Between May 6, 1994, and May 20, 1994, Counsel did nothing to obtain a bond, even though he knew that CAIC's default would be taken if a bond was not posted by May 20, 1994.

On May 25, 1994, when CAIC had still not posted the bond, plaintiffs asked the trial court to issue an order entering default against CAIC. The

---

[2]Insurance Code section 1616 provides: "Before any nonadmitted foreign or alien insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, the insurer shall either (1) procure a certificate of authority to transact insurance in this state; or (2) give a bond in the action, suit or proceeding in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in the action, suit, or proceeding."

order was issued, and provided, in pertinent part, that CAIC's default "shall be and hereby is entered."[3]

Counsel misplaced the notice of plaintiffs' request for entry of default and did not appear. Counsel received notice of the entry of the default on May 30 or May 31, 1994.

At the default judgment prove-up hearing on June 17, 1994, the trial court awarded Ross $2,258,193.03 in damages against CAIC. The default judgment also found that CAIC had a duty to defend, and a duty to fully and completely indemnify Lorenz and Lorenz Construction against Ross's claims, lawsuit, and judgment against them.

On June 24, 1994, a meeting was held between Counsel, Hagan, and Silva. Counsel did not tell Hagan or Silva that a default had been entered against CAIC. Instead, he again discussed with Hagan and Silva his strategy regarding reduction of the bond amount. He did not suggest that LMP try to locate a bond or suggest that LMP tell CAIC that a bond was required.

On June 29, 1994, a notice of levy was served on CAIC's bank. CAIC thus learned of the default judgment and bond order.

CAIC changed counsel. On July 1, 1994, CAIC's new counsel appeared ex parte before the trial court. CAIC informed the court that it had established a trust account in the amount of $2.5 million in favor of Ross and Lorenz.

On July 11, 1994, CAIC's new counsel moved, pursuant to Code of Civil Procedure section 473, to vacate the June 17, 1994, default judgment and the May 25, 1994, entry of default on the ground of attorney fault by former counsel.[4]

According to CAIC, its former counsel never told it about Ross's motion requesting a bond, never told CAIC that the motion was granted, and

---

[3]The trial court's order provided, "On April 13, 1994, this Court ordered that the verified answer of defendant, CAIC, an alien insurer, be stricken. Said order also provided that CAIC had 10 days in which to deposit a $2,500,000.00 security with this Court in the form of cash or in the form of a bond . . . . The order provided further that if said security was not deposited within said 10 days, then CAIC's default would then be ordered entered and Plaintiffs would have the right to proceed to have judgment entered against CAIC. . . . [¶] This Court finds that the Defendant, CAIC has failed to deposit the required $2,500,000.00 security with this Court and that CAIC has not complied with this Court's order of April 13, 1994. [¶] It Is HEREBY ORDERED, DECREED AND ADJUDGED that the default of [CAIC] shall be and hereby is entered."

[4]Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

CAIC's answer stricken, never told CAIC that Counsel had stipulated to a $2.5 million bond, never told CAIC that a 10-day deadline was set for posting the bond, never told CAIC that its answer would be reinstated only if the deadline was met, and never told CAIC that the deadline was not met.

On July 19, 1994, plaintiffs applied for a 90-day continuance to permit them to conduct discovery to "show that CAIC's default was not caused by its attorneys." The request was granted and the section 473 hearing was continued to October 1994.

On August 4, 1994, CAIC filed a $2.5 million bond, which remains in place.

On October 4, 1994, Judge Ambler granted CAIC's motion under section 473, thereby vacating both the May 25, 1994, entry of default and the June 17, 1994, default judgment.

While this appeal was pending, CAIC requested that this court take judicial notice of the legislative intent service history of the 1988 and 1991 amendments to section 473. We decided to consider that request when we considered the merits of this appeal. We now decide to grant that request.

## Appealability

■ CAIC argues in a footnote that only Ross has standing under section 904.1, subdivision (a)(2), to appeal the October 4, 1994, vacating order because only Ross obtained a default judgment against CAIC. However, the June 17, 1994, default judgment also provided that CAIC had a duty to defend and indemnify Lorenz and Lorenz Construction. Thus, Lorenz did obtain a judgment against CAIC. Moreover, the rights that Lorenz had assigned to Ross are at issue in this appeal. (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 14 [123 Cal.Rptr. 288, 538 P.2d 744].) Lorenz's joinder is therefore necessary to prevent a splitting of the cause of action (*Cain* v. *State Farm Mut. Auto. Ins. Co.* (1975) 47 Cal.App.3d 783, 795 [121 Cal.Rptr. 200]), and also in the interest of judicial economy (*Miller* v. *Silver* (1986) 181 Cal.App.3d 652, 658 [226 Cal.Rptr. 479]).

## Discussion

### I. *Applicability of Section 473*

■ Plaintiffs contend the default cannot be vacated under section 473's attorney affidavit provision. They argue that section 473's attorney affidavit

provision only permits defaults entered by the clerk to be vacated. Because this default was entered by the trial court, plaintiffs claim section 473 does not apply. We disagree. Before explaining our conclusion, we first review the pertinent legal principles.

Section 473 permits a party or the party's legal representative to be relieved from the consequences of mistake, inadvertence, surprise, or neglect. Two aspects of section 473 achieve this end. First, section 473 provides for discretionary relief. Under this provision, the court "*may*, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or *other proceeding* taken against him or her through his or her mistake, inadvertence, surprise, or *excusable* neglect." (§ 473, italics added.) This provision authorizes relief from any action taken in the case. " 'Anything done from the commencement to the termination is a proceeding.' " (*Zellerino* v. *Brown* (1991) 235 Cal.App.3d 1097, 1105 [1 Cal.Rptr.2d 222].) A party seeking such relief must show "mistake, inadvertence, surprise or *excusable neglect*." (§ 473.) It is within the trial court's discretion to grant relief under this provision. (§ 473; Weil & Brown, Civil Procedure Before Trial (The Rutter Group 1995) ¶ 5:310, p. 5-63.)

Section 473 also includes an "attorney affidavit" provision. Under this provision, a party is relieved from the consequences of his or her *attorney's* mistake, inadvertence, surprise, or *neglect*. Relief is available regardless of whether the attorney's neglect is excusable. (*Metropolitan Service Corp.* v. *Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1487 [37 Cal.Rptr.2d 575]; see also *Cisneros* v. *Vueve* (1995) 37 Cal.App.4th 906, 909 [44 Cal.Rptr.2d 682].) Moreover, if the requirements of this provision are met, then relief is *mandatory*. (§ 473; see also *Cisneros* v. *Vueve, supra*, 37 Cal.App.4th at p. 909; *Todd* v. *Thrifty Corp.* (1995) 34 Cal.App.4th 986, 991 [40 Cal.Rptr.2d 727]; Weil & Brown, Civil Procedure Before Trial, *supra*, ¶ 5:293, p. 5-58.)

The attorney affidavit provision states in pertinent part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) *resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment*, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, italics added.)

The attorney affidavit provision authorizes relief from the entry of default and the resulting default judgment or a dismissal. It does not permit relief

from other judgments, such as a summary judgment or judgment after trial. (See, e.g., *Ayala* v. *Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40, 44 [8 Cal.Rptr.2d 637].) It also does not allow relief from a costs order. (*Douglas* v. *Willis* (1994) 27 Cal.App.4th 287, 291 [32 Cal.Rptr.2d 408].) Although the attorney affidavit provision authorizes relief from a dismissal, it does not apply to dismissals under section 583.410 for delay in prosecution of the action. (*Graham* v. *Beers* (1994) 30 Cal.App.4th 1656, 1661 [36 Cal.Rptr.2d 765].) This is because these types of dismissals are "ordered after a hearing in which the court has evaluated and considered the excuses for delay. Plaintiff cannot circumvent the court's ruling by filing an attorney affidavit of fault: '(T)he Legislature cannot have intended section 473 to be the perfect escape hatch from the dismissals statutes.' " (Weil & Brown, Civil Procedure Before Trial, *supra*, ¶ 5:299.3, p. 5-60, quoting *Graham* v. *Beers, supra*, 30 Cal.App.4th at p. 1661, italics omitted.)

The purpose of the attorney affidavit provision "is to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits." (*Metropolitan Service Corp.* v. *Casa de Palms, Ltd., supra*, 31 Cal.App.4th 1481, 1487; see also *Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1605, fn. 14 [265 Cal.Rptr. 719].)

■ We must interpret the attorney affidavit provision of section 473. "In interpreting the language of a statute, we first turn to the words themselves." (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 854 [25 Cal.Rptr.2d 500, 863 P.2d 745].) In construing a statute, ". . . a court should ascertain the intent of the Legislature so as to effectuate the law's purpose, and in determining intent the court first turns to the words used. [Citation.]" (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) If "statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. [Citations.]" (*Ibid.*)

■ According to the plaintiffs, the reference to "the clerk" within the attorney affidavit provision means that only a clerk-entered default may be vacated under section 473. Under plaintiffs' reading, a default entered by a judge is not subject to section 473. As we explain below, plaintiffs' interpretation is plainly incorrect.

The statutory procedures under section 585 authorizing entry of a default and default judgment demonstrate that section 473's reference to "the clerk" is a word of description rather than a word of limitation. Section 585 sets forth the procedures for entry of default and default judgment. It applies where "the defendant fails to answer the complaint." A "failure to answer"

includes the situation where an answer is filed and then stricken by the court. (See *Greenup* v. *Rodman* (1986) 42 Cal.3d 822, 827 [231 Cal.Rptr. 220, 726 P.2d 1295]; *Brown* v. *Ridgeway* (1983) 149 Cal.App.3d 732, 736 [197 Cal.Rptr. 327]; *Arata* v. *Tellurium G. & S. M. Co.* (1884) 65 Cal. 340, 342 [4 P. 195, 4 P. 344].)

Under section 585, a default is generally entered by the clerk. A judge enters a default only if no clerk is available. (§ 585.) Specifically, section 585 provides that when the prerequisites for entry of default exist, "*the clerk, or the judge if there is no clerk, . . . shall enter the default of the defendant.*" (§ 585, subd. (b), italics added.)[5] As Witkin states, "The clerk always enters the default . . . ." (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 217, p. 525, italics omitted.) "The clerk 'shall enter the default' if the conditions (service and no answer) exist. (C.C.P. 585(a)(b).) His duty is purely ministerial, and is limited by the statutory conditions. It is true that he must ascertain whether these conditions exist, i.e., whether the action is one in which he may act alone, whether summons was served, and whether the time for answer has elapsed. [Citation.] He must determine these matters, however, from the face of the record; he must enter the default if they appear therefrom, and refrain from entering it if they do not. He cannot take outside evidence, nor make any judicial determination of disputed matters not apparent on the face of the record." (6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, § 228, pp. 532-533, italics omitted.)

As noted, under section 585, subdivision (b) the clerk "shall enter the default." Thus, entry of the default by the clerk is the usual procedure. Since entry of the default by the clerk is the usual procedure, section 473's reference to the clerk's default is reasonably interpreted to be merely descriptive. The reference to "clerk's" default simply describes how most defaults are entered.

Further, section 585 only authorizes entry of the default by the judge when "there is no clerk." Thus, entry of the default by the judge occurs only for reasons of practicality (when there is no clerk). Given this fact, we doubt that the Legislature made a conscious choice to exclude judge-entered defaults from section 473's attorney affidavit provision. Since judge-entered defaults occur merely for reasons of fortuity—where there is no clerk—or, as apparently happened here—simply because plaintiffs requested it—denying a party relief based upon such fortuities would plainly be unfair.

---

[5]Section 585, subdivision (a) provides that "the clerk, or the judge if there is no clerk, . . . shall enter the default of the defendant . . . ." Section 585, subdivision (b) provides that "the clerk, or the judge if there is no clerk, . . . shall enter the default of the defendant. . . ." Section 585, subdivision (c) provides, "the clerk, or the judge if there is no clerk, . . . shall enter the default of the defendant. . . ."

Plaintiffs' attempt to interpret the term "clerk" restrictively is also contradicted by the plain language of section 473 itself. Under the attorney affidavit provision, relief is authorized "unless the court finds that *the default or dismissal* was not in fact caused by the attorney's mistake, inadvertence, surprise or neglect." As the emphasized language demonstrates, there is no reference to the "clerk" here, thereby suggesting that plaintiffs read too much importance in the use of the word "clerk" elsewhere in the attorney affidavit provision. (Cf. *Cisneros* v. *Vueve*, *supra*, 37 Cal.App.4th 906, 911.)

Indeed, section 473's legislative history confirms that the Legislature never analyzed, discussed, or even mentioned the fact that some defaults may be entered by the judge, rather than the clerk. Nothing in the legislative history indicates the Legislature consciously chose to exclude judge-entered defaults from section 473's attorney fault provision. Nothing in the legislative history suggests there was any reason why the Legislature would have meant to include only clerk-entered defaults within section 473's attorney provision. As we discuss below, analysis of the legislative history confirms the validity of our conclusions.

Section 473, in its present form, is the result of two amendments made in 1988 and 1991. Prior to the 1988 amendment, section 473 allowed a party to apply for relief from judgment on the ground of mistake, inadvertence, surprise, or excusable neglect. At that time, section 473 did not include an attorney affidavit provision. (Legis. Counsel's Dig., Sen. Bill No. 1975 (1987-1988 Reg. Sess.))

In 1988, Senate Bill No. 1975, 1987-1988 Regular Session (hereafter, Senate Bill No. 1975) was introduced to "require that when an application [for relief] is timely filed, in proper form, and accompanied by an attorney's sworn affidavit, the court shall vacate any resulting default judgment entered against his or her client because of the attorney's mistake, inadvertence, surprise, or *neglect*, unless the default was not in fact due to these reasons . . . ." (*Ibid.*, italics added.) Senate Bill No. 1975 required the court, when relief was granted, "to direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties." (*Ibid.*) It also authorized the court to "impose sanctions upon the offending attorney or defaulting party . . . ." (*Ibid.*)

While the 1988 amendment required the vacation of the default judgment on the basis of the attorney's sworn affidavit attesting to the attorney's fault, it was silent as to the default itself that resulted in the default judgment.

On March 7, 1991, Senator Davis introduced Senate Bill No. 882, 1991-1992 Regular Session (hereafter, Senate Bill No. 882) to expressly address

the effect of the attorney's fault on the entered default. As originally introduced, Senate Bill No. 882 provided that "[w]henever relief from a default judgment is granted pursuant to this section based upon an attorney's affidavit of fault, relief from the default judgment shall also include and be deemed to include relief from the default that resulted in the judgment; this does not constitute a change in, but is declaratory of the existing law."

The Legislative Counsel's Digest explained the purpose of Senate Bill No. 882: "This bill would specify that vacation of a default judgment under these provisions also vacates the underlying default, and that this is declaratory of existing law." (Legis. Counsel's Dig., Sen. Bill No. 882 (1991-1992 Reg.Sess.).)

On May 20, 1991, Senate Bill No. 882 was amended to make two changes. The first change was in the text of the bill itself. The amended version authorized the vacation of any "resulting default *entered by the clerk* against his or her client, and which will result in entry of a default judgment." (Italics added.)

The second change was in the language of the purpose clause of the Legislative Counsel's Digest. Instead of stating that "[t]his bill would specify that vacation of a default judgment under these provisions also vacates the underlying default, and that this is declaratory of existing law," the statement of purpose was changed to read: "This bill would similarly require vacation of the *clerk's* default under those circumstances." (Sen. Bill No. 882 (1991-1992 Reg. Sess.) as amended May 20, 1991, italics added.) The amended version also deleted language that Senate Bill No. 882 was merely "declaratory of existing law."

The May 20, 1991, changes were carried over to the final text of Senate Bill No. 882. The changes conformed to the recommendation of the State Bar of California, which had sponsored the measure. Resolution 5-2-90 of the State Bar's conference of delegates had specified vacation of the clerk's default. Likewise, the State Bar's July 5, 1991, letter to the chairman of the Assembly Judiciary Committee, requesting that committee's support, had specified that the bill would "provide for a mandatory setting aside of a clerk's default as well as of a default judgment under the circumstances described above." The California Judges Association supported Senate Bill No. 882, stating that "SB 882 codifies existing practice of the courts, and corrects a mistake made when the code sections concerning vacation of default judgments were amended some time ago. It specifies that a court order vacating a default judgment also vacates the underlying default."

Thus, section 473 was amended in 1991 to ensure that the trial court had the power to vacate the underlying default, as well as the default judgment. Although plaintiffs seize upon the fact that the Legislature inserted the word

"clerk" into the text of the bill, the Legislature never analyzed, discussed, or even mentioned the fact that some defaults were entered by the judge, as opposed to the clerk. The Legislature never expressed any desire to exclude judge-entered defaults from section 473. Instead, the legislative history demonstrates that the Legislature's sole concern was ensuring that section 473 empowered a trial court to vacate the underlying default. The reference to the "clerk" was simply the Legislature's method of describing the default, and most likely the Legislature's attempt to clearly distinguish between the default and the default judgment itself.

Not only does the legislative history not support plaintiffs' contention, but plaintiffs' interpretation would itself contravene the Legislature's purpose in enacting section 473's 1991 amendment. If plaintiffs' construction were accepted, and only a clerk-entered default could be vacated, then the very problem sought to be remedied by the 1991 amendment would recur. If the default was entered by the judge, and a party sought to vacate the default and default judgment under the attorney affidavit provision of section 473, *only* the default judgment could be vacated. The default judgment could be vacated because section 473 does not distinguish between a default judgment entered by a clerk and a default judgment entered by a judge.[6] However, the judge-entered default would remain in force. Thus, under plaintiffs' interpretation of the attorney affidavit provision, any time a judge ordered entry of default, the situation sought to be corrected by the 1991 amendment to section 473—the problem of vacating the default judgment without vacating the underlying default—would automatically exist.

Further, under plaintiffs' construction of section 473, a defaulting party's right to relief under section 473 would be contingent upon a procedural fortuity—whether or not the judge entered the default. What possible rationale could there be for such a result? Certainly there is no such rationale evident from section 473's legislative history. Certainly we can discern no such rationale from the language of section 473 itself, from section 585, or from the case law. To the contrary, we believe plaintiffs' construction of section 473 would result in an absurdity. It is settled that statutory language should be interpreted in a way to avoid absurd results. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849 [59 Cal.Rptr. 609, 428 P.2d 593].)

Plainly there is no reason to distinguish between a judge-entered default and a clerk-entered default in *this* particular case. What happened in this case was a procedural fortuity, for which plaintiffs themselves provided the

---

[6]In certain limited circumstances, section 585 authorizes entry of the default *judgment* by the clerk, rather than after a prove-up hearing before the court. (See, e.g., § 585, subd. (a).)

impetus. Here, CAIC's default was entered by the judge, at *plaintiffs'* request, pursuant to the May 25, 1994, order. Plaintiffs could have chosen to have the clerk enter the default. As already noted, the trial court ordered CAIC's answer stricken during the March 29, 1994, hearing. It ordered that the answer be reinstated if the bond was timely posted. The time expired and no bond was posted. At this point, plaintiffs could have gone to the clerk and requested entry of CAIC's default, using the Judicial Council form adopted for this purpose. (Cf. *Greenup* v. *Rodman, supra*, 42 Cal.3d 822, 827-828 [failure to answer includes situation where answer is filed but later stricken by the court].) This is the statutorily mandated procedure under section 585. The fact that *plaintiffs* chose a different course, by requesting that the judge enter the default, and the fact that the trial court proceeded to enter the default itself, cannot fairly be the basis for denying *CAIC* relief under the attorney affidavit provision of section 473.[7]

The mandatory nature of Insurance Code section 1616 exposes another flaw in plaintiffs' argument. According to plaintiffs, the trial judge here exercised his "discretion" in entering the default, thus distinguishing this default from one entered by a clerk. Under plaintiffs' reasoning, section 473 only authorizes relief from ministerial, as opposed to discretionary acts. Thus, plaintiffs claim that only a clerk-entered default may be vacated because only a clerk-entered default is ministerial. Putting aside for the moment the fact that nothing in section 473's legislative history includes any reference to a judge-entered default or that nothing within section 585 suggests that there exists a species of "discretionary judge-entered defaults," the fact is that *no* discretion was exercised here. Insurance Code section 1616 is *mandatory*. Under Insurance Code section 1616, a nonadmitted foreign or alien insurance company has two options. It can either obtain a certificate of authority to transact insurance in California or it can post a bond in an amount sufficient to secure any final judgment. One of these requirements must be met before the insurer can file any pleading in any action, suit or proceeding against it. (Ins. Code, § 1616.)

Accordingly, although plaintiffs suggest the trial court exercised discretion in entering the default, this is simply not true. The trial court's hearing involved no weighing of the merits; there was no discretion in deciding

---

[7]We have found no case involving a judge-entered default in circumstances such as these. Cases demonstrate that the entry of a default may occur after the judge strikes the answer, and then the clerk enters the default (see *Sugasawara* v. *Newland* (1994) 27 Cal.App.4th 294 [32 Cal.Rptr.2d 484]) or with the trial court striking the answer and entering the default itself (see, e.g., *Collisson & Kaplan* v. *Hartunian* (1994) 21 Cal.App.4th 1611, 1616 [26 Cal.Rptr.2d 786]; *Housing Authority* v. *Gomez* (1972) 26 Cal.App.3d 366, 370 [102 Cal.Rptr. 657]). In these cases, whether the judge or clerk enters the default does not appear to be based upon any stated rationale but appears only to be a matter of procedural fortuity.

whether a bond was required. Under section 1616, the trial court had no discretion to waive the bond requirement.

Plaintiffs suggest the trial court's decision to grant CAIC a continuance to post the bond amounted to a discretionary act, thereby distinguishing this judge-entered default from one entered by a clerk. We disagree. The trial court's discretion to allow a party more *time* to *comply* with a mandatory requirement does not make the requirement any less mandatory.

Besides contradicting section 585 and besides the fact that no discretion was exercised by the judge here, plaintiffs' attempt to isolate a judge-entered default as uniquely involving judicial decisionmaking overlooks the fact that the attorney affidavit provision also authorizes vacating a *dismissal*, as well as a default judgment. Dismissals are not entered by the clerk, are plainly not ministerial in nature, and are often entered by the trial court itself. (§ 581.) Under section 581, *the trial court* is empowered to dismiss a complaint or cross-complaint under certain enumerated circumstances. Thus, the centerpiece of plaintiffs' contention—that a default entered by a judge is a distinct species because the *judge* enters the order and therefore the order is not ministerial—collapses when one recognizes that the attorney affidavit provision expressly authorizes relief from dismissals as well.

Nor does case law support plaintiffs' interpretation of section 473. Although numerous courts have addressed the attorney affidavit provision, no court has interpreted section 473 as plaintiffs suggest. (See, e.g., *Sugasawara* v. *Newland, supra,* 27 Cal.App.4th 294; *Cisneros* v. *Vueve, supra,* 37 Cal.App.4th 906; *Taylor* v. *Varga* (1995) 37 Cal.App.4th 750 [43 Cal.Rptr.2d 904]; *Graham* v. *Beers, supra,* 30 Cal.App.4th 1656.)

Plaintiffs rely upon *Graham* v. *Beers, supra,* 30 Cal.App.4th 1656 and *Tustin Plaza Partnership* v. *Wehage* (1994) 27 Cal.App.4th 1557, 1566 [33 Cal.Rptr.2d 366]. In *Graham,* the court concluded that section 473's attorney affidavit provision does not apply to the discretionary dismissal statutes. (See, e.g., § 583.410.) *Graham* recognized that the discretionary dismissal statutes overlap with section 473's attorney affidavit provision, because both provisions focus upon "excuses" for misfeasance. In other words, under the discretionary dismissal statutes, dismissals are "ordered after a hearing in which the court has evaluated and considered the *excuses for delay.* Plaintiff cannot circumvent the court's ruling by filing an attorney affidavit of fault . . . ." (Weil & Brown, Civil Procedure Before Trial, *supra,* ¶ 5:299.3, p. 5-60, original italics deleted and new italics added.) In this respect, as *Graham* recognized, ". . . the Legislature cannot have intended section 473 to be the perfect escape hatch from the dismissal statutes. . . . 'A plaintiff

who has failed to convince the trial court that the prosecution of the case was diligent would have the case dismissed. That same plaintiff would then jump back into court on a section 473 motion, accompanied by an attorney's affidavit of negligence, and have the case reinstated based on the same facts offered, but discarded, in the hearing on the request to dismiss. The Legislature cannot have intended such an absurd result.' " (*Graham* v. *Beers, supra*, 30 Cal.App.4th at p. 1661.)

*Graham* is plainly distinguishable from this case. In *Graham*, the court recognized that the discretionary dismissal statutes require that a trial court evaluate "excuses" for delay. In this case, the trial court did not assess the validity of CAIC's reasons for not posting the bond; in fact, the trial court had no discretion to waive the bond requirement. Moreover, to the extent that plaintiffs suggest the trial court's discretion to grant CAIC more time to post the bond was analogous to a trial court's ruling under the discretionary dismissal statutes, they are incorrect. The discretionary dismissal statutes focus upon the time restrictions for prosecuting a case. Insurance Code section 1616, by contrast, requires that a bond be posted; delay or lack thereof is not the issue. Indeed, if plaintiffs' comparison were accepted, then any trial court decision to grant a party more time to file an answer, or amend its answer, for example, could form the basis for excluding any ultimate default from the scope of section 473.

Also distinguishable is *Tustin Plaza Partnership* v. *Wehage, supra*, 27 Cal.App.4th 1557. Like *Graham* v. *Beers, supra, Tustin* held that section 473's attorney affidavit provision did not apply to section 583.410. In so holding, *Tustin* quoted *Williams* v. *Los Angeles Unified School Dist.* (1994) 23 Cal.App.4th 84, 105 [28 Cal.Rptr.2d 219], in which the court stated, "A motion for relief from default may not be used to merely amplify or supplement the evidence and arguments that were presented in opposition to the original motion to dismiss. [Citation.] The motion for relief from default in the instant case was merely a repeat of the original opposition to the motion for dismissal, to the extent that [the moving party] refiled copies of the same declarations."

Plainly, this case does not implicate the concerns emphasized in *Tustin* and *Williams, supra*. The trial court entered a default against CAIC because CAIC did not post a bond. The trial court did not consider whether former Counsel's mistakes and neglect was responsible for CAIC's failure to post the bond. Thus, when CAIC moved to vacate the default on the grounds of attorney mistake, it was not simply rearguing issues which had already been raised.

Finally, the policy of the law favors trial on the merits; it does not favor default. (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902,

749 P.2d 339]; *Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713]; see also *Caldwell* v. *Methodist Hospital* (1994) 24 Cal.App.4th 1521, 1524 [29 Cal.Rptr.2d 894].) Further, section 473 is generally liberally applied and the court may grant relief under its provisions in the absence of an express provision to the contrary. (*McCormick* v. *Board of Supervisors* (1988) 198 Cal.App.3d 352, 359 [243 Cal.Rptr. 617].) Similarly, an appellate court will more carefully scrutinize orders denying relief under section 473, than orders which permit trial on the merits. (*Mink* v. *Superior Court* (1992) 2 Cal.App.4th 1338, 1343 [4 Cal.Rptr.2d 195].)

In this case, we note that CAIC *did* ultimately post the $2.5 million bond. The bond is in place. All that remains is for CAIC and plaintiffs to have their day in court. To deny CAIC that opportunity because plaintiffs chose to have the trial court enter the default would be patently unjust. For all these reasons, we conclude that section 473's attorney affidavit provision applies to the default and default judgment entered here.

## II. *Attorney Fault*

██ Having concluded that section 473's attorney affidavit provision applies, we next review the trial court's decision to grant relief under that provision. As we explain, there was substantial evidence to support the trial court's finding that CAIC's attorney caused the default.

Section 473's attorney affidavit provision mandates relief "unless the court finds that the default or dismissal *was not in fact caused* by the attorney's mistake, inadvertence, surprise, or neglect." (Italics added.) ██ This provision "clearly involves an assessment of credibility by the trial court. . . . [¶] Credibility is an issue for the fact finder. As we have repeatedly stated, we do not reweigh evidence or reassess the credibility of witnesses. [Citation.] ' "We have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." [Citations.]' [Citation.] When, as here, 'the evidence gives rise to conflicting reasonable inferences, one of which supports the findings of the trial court, the trial court's finding is conclusive on appeal. [Citations.]' [Citation.]" (*Johnson* v. *Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622-623 [34 Cal.Rptr.2d 26].)

██ In his declaration in support of CAIC's section 473 motion, CAIC's Counsel stated that the entry of default and default judgment was caused by his own neglect. Counsel claimed that he was the only one aware of the May 20, 1994, deadline to post the bond.

According to plaintiffs, CAIC and Counsel were jointly responsible for the entry of the default and default judgment. Plaintiffs rely upon the trial court's May 25, 1994, order entering default. In that order, the trial court stated, in pertinent part, "At a May 6, 1994 Hearing seeking an extension of time to comply with the April 13, 1994 Order, *representations were made to the Court and the Plaintiffs, by [CAIC's Counsel] attorneys for Defendant CAIC. He represented that CAIC had been diligently working in an attempt to post the bond . . . .*" (Italics added.)

Plaintiffs contend this order constitutes a judicial finding that CAIC knew of the bond requirement, and was working to secure the funds to post the bond. Thus, plaintiffs argue that CAIC is estopped from arguing that Counsel—and not CAIC—was arranging for the security. We disagree. As the order plainly provides, the trial court simply noted that Counsel had *represented* that CAIC was diligently working to post the bond. The trial court's comments regarding Counsel's "representations" clearly cannot be construed as a judicial finding that CAIC was working to secure the bond. The trial court's statements only describe what Counsel represented. And even that representation is open to interpretation. When Counsel referred to CAIC working to secure the bond, he could have meant that he was working on behalf of CAIC to secure the bond. But in any event, the trial court's statements about Counsel's representations plainly cannot be construed as a finding by the trial court that CAIC was diligently working to post the security.

Plaintiffs also argue that Hagan had notice of the April 13 order requiring posting of the bond. Plaintiffs contend that because Hagan was CAIC's agent, CAIC must also be deemed to have had notice of the order. We are unpersuaded. The trial court found that former Counsel's mistakes "caused" the default and entry of default judgment. Whether Hagan had notice or CAIC had notice, there is still substantial evidence to support the trial court's findings that Counsel *caused* the entry of the default. Indeed, there is evidence that suggests Counsel told Hagan to "sit tight" and implied that he would take care of the problem with the bond.

"When, . . . 'the evidence gives rise to conflicting reasonable inferences, one of which supports the findings of the trial court, the trial court's finding is conclusive on appeal. [Citations].' [Citation.]" (*Johnson* v. *Pratt & Whitney Canada, Inc., supra,* 28 Cal.App.4th 613, 622-623.) In this case, there is evidence to support the trial court's finding that Counsel caused the default because he allowed the deadline to pass without arranging for sufficient security. Accordingly, we conclude the trial court did not err in vacating the default and default judgment under section 473's attorney affidavit provision.

*Disposition*

The judgment is affirmed. Costs on appeal to CAIC.

Mihara, J., concurred. Premo, Acting P. J., concurred in the judgment.

A petition for a rehearing was denied December 21, 1995, and the petition of plaintiffs and appellants for review by the Supreme Court was denied March 21, 1996.