Filed 7/30/13  Yuyao Linsheng Electrical Appliance v. AMICO International CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| YUYAO LINSHENG ELECTRICAL APPLIANCE CO., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> AMICO INTERNATIONAL CORP., et al., <br><br> Defendants and Respondents. | B242782 <br><br> (Los Angeles County Super. Ct. No. BC441671) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles F. Palmer, Judge.  Affirmed.

Daniel J. Koes for Plaintiff and Appellant.

Robert H. Appert for Defendants and Respondents.

**INTRODUCTION**

Plaintiff and appellant Yuyao Linsheng Electrical Appliance Co. (Yuyao) appeals from a judgment in favor of respondents AMICO International Corp., AMICO Power Corp., Just Trading, Inc., Xing Jung Miao and Hong Yan Jiang, following a bench trial. Yuyao contends that the trial court erred in denying its request for a continuance of the trial based on the fact that Yuyao's only witness was unable to secure a visa in time to travel from China to Los Angeles for the scheduled trial date. We conclude that the court did not abuse its discretion in finding that Yuyao failed to show good cause for the continuance, and thus we affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Yuyao is a Chinese corporation, operating in China, that sold electrical and mechanical equipment to respondents in the years 2004 to 2007. Yuyao filed a complaint against respondents on July 14, 2010, alleging causes of action for breach of contract, account stated, quantum meruit, and promissory estoppel. Yuyao sought damages in the amount of $770,677.76. The parties waived jury trial, and a bench trial was set for September 12, 2011.

*Withdrawal of Yuyao's Original Counsel and Continuance of Trial Date*

On June 29, 2011, Yuyao's counsel, Matthew Slater, moved to be relieved as counsel due to "a complete breakdown in attorney-client communications making further representation in this matter impossible." The court denied the motion without prejudice, on procedural grounds. On August 8, 2011, Slater filed an ex parte application seeking to continue the trial date and to withdraw as counsel. Following a hearing on August 16, 2011, the court granted the motion for a continuance, and continued the trial date from September 12, 2011 to April 9,

2012.  The court's August 16, 2011 order indicated that no further continuances would be granted.  The court again denied Slater's motion to withdraw because he failed to give the statutorily required notice.  A subsequent request by Slater to be relieved as counsel, on the basis of "an irreparable breakdown in the attorney-client relationship making further representation in this matter impossible," was granted on October 6, 2011.  On October 7, 2011, the order granting that request and reiterating the April 9, 2012 trial date was served by mail on Wei Chen, the general counsel of Yuyao.

Yuyao obtained new counsel, Martin Rajabov, who was substituted in as new counsel on December 28, 2011, and Armen Amirkhanian associated in as co-counsel on March 22, 2012.

*Yuyao's Requests for Another Trial Continuance*

On April 3, 2012, six days before trial was scheduled to begin, Yuyao moved ex parte for a 60-day continuance of the trial date so that Yuyao's general manager, Deng Shun Pan, who resided in China, could attend and testify at trial.  Yuyao's counsel had spoken with Chen on the phone on March 26, 2012, to confirm Pan's attendance at trial, at which time Chen informed them that Pan could not be in California on April 9.  Chen told counsel that the company was aware of the April 9, 2012 trial date, but no one had informed Pan or anyone else at the company that Pan needed to be present to testify at trial.  Chen estimated it would take eight weeks to secure the necessary travel documents and visa for Pan to travel from China to the United States.  She also informed counsel that Pan "is engaged in urgent business matters" in China that would conflict with the April 9, 2012 trial date.  A declaration from Pan likewise indicated that due to an urgent business matter, he was unable to travel to Los Angeles before April 9, 2012.

3

Yuyao's motion recounts that after learning of Pan's unavailability for trial, Yuyao's counsel immediately brought the fact to the court's attention at the final status conference on March 29, 2012 and orally requested a continuance of the trial date. The court responded that it had issued an order on August 16, 2011, indicating that there would be no further continuances of the trial date. Yuyao's motion indicated that its current counsel were unaware of that order, which was not present in the files they inherited from previous counsel.

Yuyao further represented that Pan was Yuyao's main witness who would testify to the agreement between the parties and the breach of that agreement, and would be able to authenticate documentary evidence. Yuyao argued that it would suffer irreparable harm and prejudice if Pan were unable to attend the trial. Respondents opposed the request.

The trial court denied the request to continue the trial date, noting that "[a]t the request of plaintiff, the court previously continued the trial date for seven months and in its order granting the continuance specifically advised the parties that there would be no further continuances. The record reveals insufficient diligence by applicant and insufficient good cause to continue the trial again. Any inability on the part of applicant's witness to appear at trial is a result of its lack of diligence in pursuing its claims in this court or its counsel's failure to advise applicant many months ago that applicant would need a witness present at trial."

Three days later, on April 6, 2012, Yuyao brought another ex parte application to continue trial for a week, or in the alternative to trail the trial to a date after April 11, 2012. Yuyao indicated that Pan had applied for an emergency visa and had an appointment at the Consulate General of the United States in Shanghai, China, on April 10, 2012. Yuyao asserted that Pan might be able to secure a visa on the day of his interview, and if not, assuming the Consulate took the customary three days to process Chen's visa, he would be able to secure his

4

visa "on or after April 13, 2012." Pan would then need, "at the very least," one additional day for travel. Thus, the earliest Pan could appear at trial was Monday, April 16, 2012.

The trial court denied this ex parte application, again relying on its previous order that no further continuances would be granted. The court further noted that "[i]t is unclear from the present application when counsel for plaintiff first discussed with plaintiff the pending April 9, 2012 trial date and that Mr. Pan would be required to be present. Presumably it was before March 26, 2012 as the moving papers indicate that the purpose of the telephone call from counsel to plaintiff was to 'confirm' Mr. Pan's attendance at the trial. In addition, the court is available to try the case on April 9, 2012 as scheduled. Moreover, on April 16, 2012 the court is scheduled to commence trial of three different cases which have announced ready and the court is scheduled to be in trial continuously thereafter until the first week of July 2012, with perhaps a few one or two day periods between trials. In light of all these circumstances, the court finds there is insufficient good cause to continue the trial date."

On April 9, 2012, the date trial was scheduled to start, Yuyao's counsel orally requested that the trial be postponed for one day, to April 10, 2012, the date Pan's interview at the Consulate was scheduled to take place. Counsel indicated that Pan would either be issued an emergency visa on the spot, in which case he could travel to Los Angeles and be present for trial on April 11, 2012, or he would learn that it would take several more days to get a visa, in which case the trial would have to proceed without him. The court granted the request to trail the trial to the following day, April 10, 2012, and if Pan was able to secure a visa and Yuyao could represent that he would be present in court on April 12, the start date of the trial would be postponed until then.

5

On April 10, 2012, Yuyao informed the court that Pan had been unable to secure a visa that day, and that it would take three business days to receive it. The court ordered that trial commence immediately, "based on the information . . . that the emergency visa was not granted to the principal of the plaintiff, and the court's previous orders indicating that he was available this week to try the case [and] we are not available next week or thereafter."

*Trial and Motion for New Trial*

The trial commenced on April 10, 2012, and lasted four days. Yuyao did not call any of its own witnesses, and called only respondent Xing Jung Miao, the owner of AMICO Power and Just Trading and the general manager of AMICO International Corporation. Miao was also the only witness called by respondents.

At the conclusion of trial, the court ruled that Yuyao did not prove that respondents had failed to pay for goods that were ordered from Yuyao. The court issued a statement of decision finding in favor of the respondents on all causes of action, and entered judgment in their favor.

Yuyao moved for a new trial, in part on the ground that it had been denied a fair trial when the trial court refused to continue the trial date to permit Pan time to secure a visa and attend trial. Yuyao argued that Pan's inability to attend trial was not due to a lack of diligence on the part of Yuyao or its counsel, and that because Pan's attendance at trial was a "legal impossibility," the court should have granted a trial continuance. Chen's declaration stated that Yuyao's counsel first notified her by email on March 21, 2012, that Pan needed to attend trial as a witness, and Chen notified counsel on March 26, 2012, that Pan had urgent business in China in April and, in any event, would not be able to secure a visa in time to attend trial. Chen stated that Yuyao's previous counsel had never communicated the court's order that no further continuances would be granted.

6

The trial court denied the motion for a new trial. Yuyao timely appealed from the judgment and from the order denying the motion for a new trial.

## DISCUSSION

I. *Showing Required for Trial Continuance*

Trial continuances are disfavored and may be granted only on an affirmative showing of good cause. (Cal. Rules of Court, rule 3.1332(c) (rule 3.1332); see rule 3.1332(a) ["dates assigned for a trial are firm"]; Gov. Code § 68607, subd. (g) [Trial Court Delay Reduction Act provision directing judges to adopt a "firm, consistent policy against continuances, to the maximum extent possible and reasonable, in all stages of the litigation"].) "Although continuances of trials are disfavored, each request for a continuance must be considered on its own merits." (Rule 3.1332(c).)

Circumstances that may indicate good cause include the unavailability of an essential witness, party, or trial counsel due to death, illness or "other excusable circumstances." (Rule 3.1332(c)(1).) The court must also consider "all the facts and circumstances that are relevant to the determination" of whether to grant a request for a trial continuance, including: "(1) The proximity of the trial date; [¶] (2) Whether there was any previous continuance, extension of time, or delay of trial due to any party; [¶] (3) The length of the continuance requested; [¶] (4) The availability of alternative means to address the problem that gave rise to the motion or application for a continuance; [¶] (5) The prejudice that parties or witnesses will suffer as a result of the continuance; [¶] (6) If the case is entitled to a preferential trial setting, the reasons for that status and whether the need for a continuance outweighs the need to avoid delay; [¶] (7) The court's calendar and the impact of granting a continuance on other pending trials; [¶] (8) Whether trial counsel is engaged in another trial; [¶] (9) Whether all parties have stipulated to a

7

continuance; [¶] (10) Whether the interests of justice are best served by a continuance, by the trial of the matter, or by imposing conditions on the continuance; and [¶] (11) Any other fact or circumstance relevant to the fair determination of the motion or application." (Rule 3.1332(d).)

"Reviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823; see *Lazarus v. Titmus* (1998) 64 Cal.App.4th 1242, 1249.) "'An abuse of discretion occurs "where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances." [Citation.]'" (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898–899.) The denial of a motion for new trial likewise will not be disturbed on appeal absent a clear abuse of discretion. (*Schelbauer v. Butler Manufacturing Co.* (1984) 35 Cal.3d 442, 452.)

II. *"Excusable Circumstances" for Witness Absence Demonstrating Good Cause*

Yuyao contends that good cause existed for a trial continuance because Pan was an essential witness who was unavailable due to "an excusable attorney-client miscommunication." Although Yuyao admits it had notice of the April 9, 2012 trial date, it contends that the company and Pan were unaware that Pan would need to personally appear at trial and provide testimony until Yuyao's counsel raised the issue by email on March 21, 2012, at which point it was too late for Pan to obtain a visa. Yuyao asserts that its trial counsel erroneously assumed that Yuyao's previous counsel, Slater, had alerted Yuyao that Pan would need to appear at trial.

Although Yuyao contends that attorney-client miscommunications constitute "excusable circumstances" under rule 3.1332(c)(1) and therefore constitute good

8

cause for a trial continuance, none of the authorities cited by Yuyao support this general proposition. Yuyao cites a number of inapposite cases applying the mandatory relief provision of Civil Procedure Code section 473, subdivision (b) (section 473), which mandates relief from a default or default judgment when the attorney representing the defaulting party submits an affidavit indicating that the default was caused by the attorney's mistake, inadvertence, surprise or neglect. None of these cases examine the issue of whether the attorney's conduct was excusable, because under the mandatory relief provision of section 473, it is irrelevant whether the neglect is excusable. (See *In re Marriage of Hock & Gordon-Hock* (2000) 80 Cal.App.4th 1438, 1447 [not addressing whether attorney's neglect was excusable because mandatory relief was available from default where attorney submitted affidavit of fault]; *J.A.T. Entertainment, Inc. v. Reed* (1998) 62 Cal.App.4th 1485, 1492 [trial court erred in denying relief from default under section 473 on basis that attorney's neglect was not excusable, where mandatory relief provision applied and thus it was irrelevant whether neglect was excusable]; *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 601, abrogated on other grounds by *Hossain v. Hossain* (2007) 157 Cal.App.4th 454 [finding it was irrelevant whether counsel's calendaring error was excusable because mandatory relief provision applied]; *Avila v. Chua* (1997) 57 Cal.App.4th 860, 868 ["Since we find that the mandatory provisions [of section 473] apply, we need not consider respondents' arguments that counsel's mistake was inexcusable."]; *Lorenz v. Commercial Acceptance Ins. Co.* (1995) 40 Cal.App.4th 981, 999 [trial court did not abuse its discretion in granting relief from default judgment under mandatory relief provision of section 473, based on attorney's neglect; court did not examine whether neglect was "excusable"].) Therefore, these cases do not aid Yuyao's contention that attorney-client miscommunications constitute "excusable circumstances" for a witness's unavailability.

9

Yuyao also relies on *Whalen v. Superior Court* (1960) 184 Cal.App.2d 598 (*Whalen*), in which the appellate court concluded that the trial court abused its discretion in denying a continuance of trial due to the unavailability of the defendant in the case. The defendant received his commission in the United States Navy two months before the date of his trial and soon afterwards was transported to Hong Kong. He neglected to advise his attorneys, who only learned of his deployment five days before trial. His attorneys promptly advised the plaintiff, who stipulated to a continuance. (*Id.* at p. 600.) In concluding that the trial court abused its discretion in denying the continuance, the appellate court focused on the fact that the defendant's absence was involuntary and especially that he was "absent because of duties compelled by military service to his country." (*Id.* at p. 601.) Further, the plaintiff had stipulated to a continuance and thus obviously would not be prejudiced by a continuance, and neither party previously had requested a continuance. (*Ibid.*)

*Whalen* does not stand for the general proposition that miscommunications between an attorney and client resulting in a witness's failure to appear at trial necessarily constitute "excusable circumstances" for the witness's unavailability at trial. Moreover, the particular circumstances in *Whalen* that led the court to conclude that a continuance should have been granted are not present here. First, unlike the unavailable party in *Whalen*, who was involuntarily absent for the scheduled trial because he was at sea serving in the Navy, Pan could have been present had he timely applied for a visa to travel to the United States. Second, in the instant case there was no stipulation to continue the trial, and respondents objected to the continuance. Third, whereas no continuance previously had been granted in *Whalen*, Yuyao had previously requested, and been granted, a six-month continuance. Therefore, the circumstances were quite different.

10

To determine whether Pan's unavailability at trial was the result of an "excusable circumstance," it is reasonable to borrow from the test applied under the *discretionary* provision of section 473 for relief from a judgment, dismissal, order, or other proceeding on the basis of mistake, inadvertence, or neglect. Whether the inadvertence or neglect was on the part of the attorney or the client, to justify discretionary relief the neglect "'"must have been such as might have been the act of a reasonably prudent person under the same circumstances."'" (*Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 230; see *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 (*Zamora*) ["[i]n determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent person under the same or similar circumstances" might have made the same error.'" [Citation.]"]; see *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1423.) Conduct falling below the professional standard of care is not excusable. (*Zamora, supra,* 28 Cal.4th at p. 258; see *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 682.)

Given the circumstances here, a reasonably prudent attorney would have confirmed with Yuyao soon after taking over the case that Pan would need to testify at trial. Given that Slater had withdrawn as counsel due to "a complete breakdown in attorney-client communications", it was not prudent for Rajabov, who succeeded Slater as counsel on December 28, 2011, to simply assume that Slater had effectively communicated with Yuyao regarding necessary witnesses at trial. Counsel also reasonably should have considered the necessity of travel visas for its Chinese witnesses, and the need for early action to secure such visas in time for trial. Thus, the trial court did not abuse its discretion in determining that the failure of communication between Yuyao's counsel and its client did not constitute an "excusable circumstance" justifying Pan's unavailability at trial and indicating good cause for a continuance. (See *Pham v. Nguyen* (1997) 54 Cal.App.4th 11, 18

11

["While the unavailability of a witness is considered good cause for a continuance . . . , the unavailability must be combined with the fact the witness has been subpoenaed (or is beyond the reach of a subpoena and has agreed to be present), and the witness's absence is 'an unavoidable emergency that counsel did not know and could not reasonably have known at the time of the pretrial or trial setting conference.' [Citations.]"]; cf. *Jurado v. Toys "R" Us, Inc.* (1993) 12 Cal.App.4th 1615, 1618 [request for short trial continuance should have been granted due to unavailability of non-party witnesses where plaintiff's counsel "exercised due diligence" by promptly serving witnesses with subpoenas and following up on them, but where witnesses failed to respect the subpoenas].)

III.    *Additional Factors for Determining Whether to Grant Continuance*

Additionally, reviewing the factors set forth in rule 3.1332(d), we cannot conclude that the trial court abused its discretion in denying the request for a continuance.  Yuyao did not move for a continuance until April 3, less than one week before trial (rule 3.1332(d)(1) [the proximity of the trial date]); the court had previously continued the trial date for seven months at Yuyao's request (rule 3.1332(d)(2) [whether there were any prior continuances]); respondents objected to the continuance (rule 3.1332(d)(9) [whether the parties have stipulated to continuance]); and the trial court previously had ordered that there would be no further continuances.[1]  (Rule 3.1332(d)(11) [other relevant circumstances].)

As for the length of the continuance (rule 3.1332(d)(3)), Yuyao initially requested a 60-day continuance, and then in its second ex parte request, requested a

---

[1]    Although Yuyao argues that the case file it inherited from previous counsel for Yuyao did not include the order stating that no further continuances would be granted, prudence would dictate that new counsel review the court docket, and with respect to any orders not contained in previous counsel's files, obtain them from the superior court file.

12

one-week continuance. However, given the court's calendar, a one-week continuance was not possible, and the earliest the trial could have been rescheduled was nearly three months later. As far as prejudice to the opposing party or witnesses if the request were granted (rule 3.1332(d)(5)), respondents argued to the trial court that they would incur additional time and expense in trial preparation if the trial were delayed again.[2]

The trial court also focused on its tight schedule (rule 3.1332(d)(7) [the court's calendar and impact on other pending trials]), noting that it was only available to conduct the trial the week of April 9, 2012, because beginning the following week, "the court [was] scheduled to commence trial of three different cases which have announced ready and the court [was] scheduled to be in trial continuously thereafter until the first week of July 2012, with perhaps a few one or two day periods between trials."

Yuyao contends that the court placed too much emphasis on the impact of a continuance on the court's calendar. (Rule 3.1332(c)(1).) Yuyao relies on *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389 (*Oliveros*), in which the appellate court found that the trial court abused its discretion in denying a continuance. There, trial counsel for the defendant was engaged in another trial. Because the defendant had no one to represent it at trial, a directed judgment was entered in plaintiffs' favor. (*Oliveros, supra,* 120 Cal.App.4th at pp. 1393-1394.) The appellate court found that "[d]ue to a series of circumstances beyond his immediate control, the [defendant's] lawyer found himself engaged in trial in another courtroom on July 9, the trial date in this case. He sought a continuance,

---

**2** There were no apparent "alternative means to address the problem that gave rise to the motion or application for a continuance" (rule 3.1332(d)(4)), no entitlement to a preferential trial setting (rule 3.1332(d)(6)), and no indication that trial counsel were engaged in another trial (rule 3.1332(d)(8)).

not because he was unprepared for trial, or because he sought a technical advantage by delaying trial, or for any other suspect reason. Rather, he was ordered to trial in another courtroom, and he could not be in two places at one time." (*Id.* at p. 1400.) Thus, the appellate court found there was good cause for the requested continuance. Moreover, the court found that the trial court had erred in solely considering the impact of a continuance on the court's calendar: "While this is a valid factor to be weighed with the other facts and circumstances presented, it cannot be the be-all and end-all. The court's failure to carefully balance all of the competing interests at stake, guided by the strong public policy in favor of deciding cases on the merits, constituted an abuse of discretion." (*Id*. at p. 1399.)

*Oliveros* recognized that where a lack of diligence led to the need for a continuance, the request need not be granted. (See *Oliveros, supra,* 120 Cal.App.4th at p. 1396 ["""absent [a lack of diligence or other abusive] circumstances which are not present in this case, a request for a continuance supported by a showing of good cause usually ought to be granted." [Citation.]'"]) Thus, *Oliveros* merely stands for the proposition that when good cause has been shown for a continuance, the court's calendar should not be the only factor that leads a court to deny the request for a continuance.

*Oliveros*, therefore, does not aid Yuyao. As discussed above, Yuyao did not exercise sufficient diligence to arrange Pan's presence at trial, and thus good cause for a continuance was not present. Moreover, it is not the case that the trial court focused solely on the impact on its calendar in denying the request. Rather, in addition to finding insufficient diligence on Yuyao's part to secure Pan's presence at trial, the court expressly took into account the previous lengthy continuance granted at Yuyao's request and the court's earlier order that no additional continuance would be granted. Further, the other factors under rule 3.1332,

14

although not expressly relied upon by the trial court, favor the decision not to grant a continuance. We therefore reject Yuyao's argument that the trial court placed undue weight on the impact a continuance would have on its calendar.

The remaining consideration is whether the "interests of justice" would best be served by a continuance, by proceeding to trial as scheduled, or by imposing conditions on the continuance. (Rule 3.1332(d)(10).) Yuyao contends that the court's denial of a continuance effectively prevented Yuyao from presenting its case, because Pan was the company's only witness, and its counsel had no choice but to try to present its case through an obstreperous adverse witness, Miao, who refused to authenticate key documents and provided largely nonresponsive testimony. Yuyao contends that the trial court failed to consider that its denial of the continuance effectively amounted to terminating sanctions. (See *Oliveros, supra,* 120 Cal.App.4th at p. 1399 [holding that trial court's decision to deny continuance that left party without representation at trial was tantamount to a terminating sanction].)

Yuyao asserts the existence of a general principle that when a party's only witness is temporarily unavailable, a continuance must be granted. However, in the cases he cites for support, the crucial importance of the witness was merely one factor considered in concluding that a continuance should have been granted, and in all of them, excusable circumstances for the witness's absence were shown.

For instance, in *Carl v. Thomas* (1931) 116 Cal.App. 294, the appellate court held that the trial court abused its discretion in failing to grant a continuance of a trial date when the defendant, a member of the Coast Guard, was at sea and thus unavailable for trial. In that case, while the defendant was at sea, the defendant's counsel timely sent a letter to the defendant advising him of the trial date that had just been set, but the defendant never received the letter. (*Id.* at p. 296.) The court concluded that "[n]either counsel nor defendant was in any way at fault for

15

defendant's failure to appear. Timely notice had been sent by counsel, defendant had arranged his leave of absence to fit this particular period, and we must conclude, on the showing made, that the defendant would have been on hand for the trial, if he had received the letter referred to." (*Id.* at p. 300.) Given that the defendant was the only person on the defense side with personal knowledge of a number of the facts, and given the lack of prejudice to the plaintiffs, the court held that the trial court erred in denying the continuance. (*Id.* at p. 301; see also *Pacific Gas & Electric Co. v. Taylor* (1921) 52 Cal.App. 307, 308 [continuance should have been granted where key witness could not attend scheduled trial due to illness]; *Betts Spring Co. v. Jardine Machinery Co.* (1914) 23 Cal.App. 705, 706 [continuance should have been granted where the defendant, who was the only witness who could prove his defense, was ill and "in search of health had journeyed to Europe" at the time of trial].) Thus, these cases do not support the notion that a continuance is always warranted when a key witness is unavailable, regardless of the circumstances leading to the unavailability.

Moreover, Yuyao ignores contrary authority holding that a continuance is not necessarily required even if a party's ability to present its case will be compromised if the continuance is denied. (See *People v. Howard* (1992) 1 Cal.4th 1132, 1171–1172 [depending on the circumstances, a denial of a continuance does not necessarily constitute an abuse of discretion even if the party is unable to offer evidence or be represented by counsel]; *Whalen, supra*, 184 Cal.App.2d at p. 600 [holding that "[t]he unavoidable absence of a party does not necessarily compel the court to grant a continuance. In such instance the court should be governed by the course which seems most likely to accomplish substantial justice, and it may take into consideration the legal sufficiency of the showing in support of the motion and the good faith of the moving party."].) Even accepting Yuyao's contention that it was unable to fully present its case at trial due

16

to Pan's absence, we cannot concluded that the "interests of justice" required the trial court in this case to grant a continuance, despite the lack of good cause shown and the other circumstances that supported the denial of the continuance.

In sum, the trial court did not abuse its discretion in denying Yuyao's requests for a trial continuance.

## DISPOSITION

The judgment is affirmed.  Yuyao to bear costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

MANELLA, J.

SUZUKAWA, J.

17