[No. B106600. Second Dist., Div. Five. Sept. 16, 1997.]

RICHARD AVILA, Individually and as Special Administrator, etc., Plaintiff and Appellant, v.
WILLIAM CHUA et al., Defendants and Respondents.

**COUNSEL**

Han & Shin and Sunnie H. Han for Plaintiff and Appellant.

Reback, Hulbert, McAndrews & Kjar, Jin N. Lew, Cotkin & Collins, David A. Winkle and Terry L. Kesinger for Defendants and Respondents.

**OPINION**

**ARMSTRONG, J.**—In this case, we consider a trial court ruling denying appellant Richard Avila's motion under Code of Civil Procedure[1] section 473 to set aside the dismissal of his complaint against respondents William Chua and Monterey Park Hospital. The dismissal was entered after the trial court struck appellant's late-filed opposition to respondents' summary judgment motions and granted summary judgment. We find that the trial court erred in denying relief under section 473, and remand the case to the trial court so that the motions for summary judgment can be determined on the merits.

*Facts*

Appellant is the son of Librada Avila, who died of pseudomonas sepsis on April 13, 1994. He brought this action individually and as special administrator of her estate. Appellant contended that his mother's death was the result of the medical treatment she received at Monterey Park Hospital

---

[1]All further statutory references are to that code.

(Hospital) from William Chua and other doctors.[2] In sum, appellant alleged that Chua and other doctors misdiagnosed Librada Avila, unnecessarily removed her gallbladder, negligently performed that surgery so that a second surgery was necessary, and rendered improper and negligent care both pre- and postoperatively.

The complaint was filed on March 3, 1995. In May of 1996, trial was set for November 19, 1996. On July 22, 1996, Chua moved for summary judgment. The Hospital filed its motion on July 24.

The Hospital proposed as undisputed the facts that Librada Avila was admitted to the Hospital by Chua on December 10, 1993; that on December 16 she underwent surgery, laparoscopic cholecystectomy (gallbladder removal) and umbilical hernia repair; that following her surgery Librada Avila experienced signs of abdominal bleeding; that a repair surgery was performed on December 19; that Librada Avila was discharged from the Hospital on January 14, 1994, and transferred to a skilled nursing facility; and that she died at Huntington Memorial Hospital on April 13, 1994, having been admitted there on April 7 for respiratory distress.

The Hospital also proposed as an undisputed fact that it employed no physicians during December of 1993 and January of 1994, that all the physicians who treated Librada Avila were independent contractors, that the care and treatment provided to Librada Avila during her stay at the Hospital were appropriate and satisfied the standard of professional care for hospitals in Southern California, and that the Hospital's conduct did not cause or contribute in any manner to Librada Avila's death. These last facts were supported by the declaration of a doctor. The declaration included the doctor's qualifications, the fact that he had reviewed Librada Avila's medical records, and his opinion, reflected in the proposed undisputed facts.

Chua proposed similar undisputed facts: He was one of the physicians providing care and treatment to Librada Avila, she underwent gallbladder surgery at the Hospital, she developed postoperative complications including pneumonia, she was transferred to a subacute care facility where Chua rendered further medical care and treatment to her. Chua also proposed as undisputed facts that his care was within the standard of care applicable to the medical community of internists/physicians, and that there was no medical causation between Librada Avila's death and the care and treatment he rendered to her. These facts were supported by the declaration of a doctor. The declaration included the doctor's qualifications, the fact that he had reviewed Librada Avila's medical records, and his opinion, reflected in the proposed undisputed facts.

---

[2]The Hospital informs us that the case is proceeding as to two other defendants.

Both motions were set for August 21, 1996. Thus, appellant's opposition was due on August 7, 1996. (§ 437c subd. (b).) Appellant did not timely file and serve the response. Instead, the oppositions were filed on August 14. The proofs of service filed with the court were also dated August 14, but both the Hospital and Chua later submitted declarations stating that the oppositions were not mailed until August 16 and did not include proofs of service.

Substantively, appellant disputed many of the Hospital's and Chua's proposed undisputed facts. Most importantly, appellant disputed the facts that respondents acted within appropriate medical standards and that respondents' actions did not cause Librada Avila's death. In support, appellant submitted declarations from two doctors. Each declaration included the doctor's qualifications, review of medical records, and the opinion that the treatment Librada Avila received at the Hospital was below the standard of care for hospitals in Southern California, that the treatment Librada Avila received from Chua was below the standard of care for physicians in Southern California, and that the Hospital and Chua proximately caused and contributed to Librada Avila's death.

On August 20, appellant unsuccessfully attempted to move ex parte for a continuance of the hearing on summary judgment.

Both the Hospital and Chua opposed appellant's response on the ground that it was untimely, although only the Hospital filed a written opposition. Chua also argued facts which were the subject of a declaration by counsel later in the proceedings, in opposition to the section 473 motion. That declaration stated that in early 1996, appellant's counsel represented that Chua had been dismissed from the action and delivered to Chua a signed request for dismissal. After that time, appellant did not serve Chua with any discovery or request his participation in the action in any way. Approximately four months later, at the time of the May status conference, appellant's counsel advised Chua that the dismissal had not been filed and would not be filed. This misrepresentation by counsel prejudiced Chua's ability to prepare a defense.[3]

At the August 21 hearing, the court denied appellant's request for a continuance, struck appellant's responses to the summary judgment motions as untimely, granted the motions, and ordered respondents to prepare judgments in their favor. The Hospital's judgment was signed on September 6, 1996, and Chua's on September 26, 1996.

---

[3]In response to this argument, appellant argued that the agreement to dismiss was based on Chua's misrepresentations regarding his involvement with Librada Avila's treatment.

On August 23, appellant moved under section 473 to vacate the grants of summary judgment. In an affidavit attached to the motion, counsel for appellant declared that she erred in calendaring the date for her response to the motion by mistakenly calendaring a due date of seven days before the hearing. When she first discovered her error, on the morning of August 20, she called respondents' counsel in order to obtain a stipulation for a continuance, but was unable to obtain a stipulation. She then attempted to move ex parte for a continuance, but was unable to prevail due to the shortness of time. Counsel also declared that she was not personally served with the Hospital's motion, as the Hospital had previously argued, but received the motion in the mail.

Respondents opposed appellant's motion, citing the facts which formed the basis for their responses to appellant's oppositions to summary judgment. In addition, the Hospital submitted a declaration from counsel regarding the events of August 20, when appellant attempted to obtain a continuance: On the morning of August 20, appellant's counsel telephoned counsel for the Hospital with 45 minutes' notice of an ex parte hearing for a continuance. Counsel for the Hospital could not attend and so informed counsel for appellant. Counsel for the Hospital then telephoned the court and informed the court staff that he opposed the continuance. Later in the morning, counsel for appellant telephoned counsel for the Hospital and informed him that the court had continued both the motion for continuance and the hearing on summary judgment to the 10:30 a.m. calendar on August 21; however, in a second telephone call to the court, counsel for the Hospital learned that the ex parte motion for continuance had been denied, and that the hearing on summary judgment had not been continued, but was still on calendar for 8:30 on August 21. The Hospital also submitted the declaration of a messenger who declared that he personally served the motion on a front desk receptionist at appellant's counsel's law office.

On September 25, 1996, the court denied appellant's section 473 motion, ruling that, "I don't think you've shown good cause. I don't think you've shown . . . an excusable mistake. It's not here. . . . and I do not think at all, the course of conduct in this is inadvertence, or negligence or mistake. The facts do not demonstrate that."

### Discussion

Section 473, subdivision (b) provides that "The court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." In the "mandatory provisions,"

section 473 further provides that "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

 Appellant argues that under the mandatory provisions of section 473, the court erred in failing to set aside the entry of summary judgment and judgment. Chua argues that the mandatory provisions of section 473 apply only to default judgments, and not to rulings on summary judgment or judgment after summary judgment. He cites in support *Ayala* v. *Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40 [8 Cal.Rptr.2d 637].

*Ayala* held that the mandatory provisions of section 473 were not applicable to a motion for relief from judgment after arbitration, where the attorney had filed an untimely request for trial de novo. At the time *Ayala* was decided, the mandatory provisions did not refer to "any . . . (2) resulting default judgment or dismissal entered," but only to "any . . . (2) resulting default judgment." The court held that since the case before it presented neither a default judgment nor a default which would result in the entry of default judgment, the mandatory provisions did not apply. (7 Cal.App.4th at p. 43.)

Two subsequent cases have cited *Ayala*, in dicta, for the proposition that the mandatory provisions do not apply to requests for relief after summary judgment. In *Lorenz* v. *Commerical Acceptance Ins. Co.* (1995) 40 Cal.App.4th 981 [47 Cal.Rptr.2d 362], the question before the court concerned the application of the mandatory provisions of section 473 to defaults entered by the trial court, rather than by the clerk. *Lorenz* reviewed the legislative history of section 473 and the statutory scheme on default judgments, and held that the mandatory provisions applied. As part of its discussion, the court noted that "The attorney affidavit provision authorizes relief from the entry of default and the resulting default judgment or a dismissal. It does not permit relief from other judgments, such as a summary judgment or judgment after trial. (See, e.g., *Ayala* v. *Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40, 44 [8 Cal.Rptr.2d 637].) It also does not allow relief from a costs order. [Citation.] Although the attorney affidavit provision authorizes relief from a dismissal, it does not apply to dismissals under section 583.410 for delay in prosecution of the action. (*Graham* v.

*Beers* (1994) 30 Cal.App.4th 1656, 1661 [36 Cal.Rptr.2d 765].) This is because these types of dismissals are 'ordered after a hearing in which the court has evaluated and considered the excuses for delay. Plaintiff cannot circumvent the court's ruling by filing an attorney affidavit of fault: "(T)he Legislature cannot have intended section 473 to be the perfect escape hatch from the dismissals statutes." ' [Citation.]" (40 Cal.App.4th at pp. 989-990.)

*Huens* v. *Tatum* (1997) 52 Cal.App.4th 259 [60 Cal.Rptr.2d 438], considered the application of the mandatory provisions of section 473 to relief from a voluntary dismissal after a settlement conference. In deciding that the mandatory provisions do not apply, the court said that "Although the statute on its face affords relief from unspecified 'dismissal' caused by attorney neglect, our courts have, through judicial construction, prevented it from being used indiscriminately by plaintiffs' attorneys as a 'perfect escape hatch' (*Graham* v. *Beers* (1994) 30 Cal.App.4th 1656, 1661 [36 Cal.Rptr.2d 765]) to undo dismissals of civil cases. Thus it has been held that the provision does not apply to dismissals under section 583.410 for delay in prosecution of the action because virtually all such dismissals are attorney caused and such a construction would result in a disfavored repeal of the discretionary dismissal statute by implication. [Citations.] Mandatory relief is not available after a summary judgment or judgment after trial, which involve actual litigation and adjudication on the merits. (*Lorenz, supra,* 40 Cal.App.4th at p. 990, citing *Ayala* v. *Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40, 44 [8 Cal.Rptr.2d 637].) Nor may it be used to circumvent the statute of limitations, whose rigid enforcement is backed by venerable and long lasting public policy considerations. [Citation.]" (*Id.* at pp. 263-264.)

In its holding, *Huens* also relied on the fact that a settlement agreement is like a contract, so that the application of the mandatory provisions of section 473, which would allow the agreement to be set aside even if there were no grounds for rescission, would constitute a serious intrusion into the law of contracts. Further, the court found that the application of the mandatory provisions would undermine the strong public policy in favor of settlements. (*Huens* v. *Tatum, supra,* 52 Cal.App.4th at pp. 264-265.) Importantly, *Huens* also noted "The purpose of the statute was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys." (*Id.* at p. 264, italics in the original.)

We find that the mandatory provisions of section 473 apply to appellant's motion here. This case is unlike *Ayala,* where, as the court noted, the litigants participated in an arbitration hearing which resulted in an award which had the same force and effect as a civil judgment. (*Ayala* v. *Southwest*

*Leasing & Rental, Inc. supra*, 7 Cal.App.4th at p. 44.) There has been no "litigation and adjudication on the merits," the rationale *Huens* suggested for excluding certain kinds of dismissals from the mandatory provisions. Instead, this case is of the kind which *Huens* found that the mandatory provisions were designed for: Appellant lost his day in court due solely to his lawyer's failure to timely act.

Similarly, *Lorenz* does not establish that the mandatory provisions are inapplicable here. The reasoning suggested in *Lorenz*, that the mandatory provisions do not apply where there has been a hearing in which the court has evaluated the excuses for delay, was developed in cases which concerned the application of the mandatory provisions to discretionary dismissals for failure to prosecute. In those cases, the dismissals are "virtually all" attorney caused, and the reasons for the delay are at the essence of the court's decision. (*Huens* v. *Tatum*, *supra*, 52 Cal.App.4th at p. 263; Cal. Rules of Court, rule 373(e).) That is not the case here. Moreover, discretionary dismissals for failure to prosecute necessarily involve extended periods of attorney inaction, and thus extended periods of time to cure the delay. This case involves one calendaring error on the part of plaintiff's counsel, with fatal consequences.

This case is directly analogous to a default judgment: Due to counsel's late filing of crucial documents, the court decided the matter on the other parties' pleadings. There was no litigation on the merits. Appellant submitted declarations which directly contradicted respondents' most crucial proposed undisputed facts, but those declarations were not considered by the court. Appellant's response was stricken, and the matter proceeded to summary judgment and judgment as if by default.

█ "The purpose of the attorney affidavit provision 'is to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' [Citations.]" (*Lorenz* v. *Commerical Acceptance Ins. Co.*, *supra*, 40 Cal.App.4th at p. 990.) █ That purpose is accomplished by the application of the mandatory provisions here.

"The law strongly favors trial and disposition on the merits. Therefore, any doubts in applying section 473 must be resolved in favor of the party seeking relief. When the moving party promptly seeks relief and there is no prejudice to the opposing party, very slight evidence is required to justify relief." (*Mink* v. *Superior Court* (1992) 2 Cal.App.4th 1338, 1343 [4 Cal.Rptr.2d 195] [discretionary provisions of section 473].)

Since we find that the mandatory provisions apply, we need not consider respondents' arguments that counsel's mistake was inexcusable. █ To

obtain relief under the mandatory provisions, "plaintiffs' counsel need not show that his or her mistake, inadvertence, surprise or neglect was excusable. No reason need be given for the existence of one of these circumstances. Attestation that one of these reasons existed is sufficient to obtain relief, unless the trial court finds that the dismissal did not occur because of these reasons. [Citation.]" (*Graham* v. *Beers* (1994) 30 Cal.App.4th 1656, 1660 [36 Cal.Rptr.2d 765].) Appellant's counsel attested to such a reason here, and appellant was entitled to relief under section 473.

The remainder of respondents' arguments are arguments in support of the trial court's August 21 decision to deny appellant's motion for a continuance and to strike his pleadings. We need not consider the arguments in detail, since our decision under section 473 obviates the necessity for a review of those rulings. We do, however, consider Chua's suggestion that counsel's "dilatory and duplicitous conduct and abuse of court process," and "flagrant" violation of the rules establishes that the failure to timely file a response was not the result of mistake or neglect, but was a deliberate tactic. Chua cites the facts that appellant's response was filed late and without a proof of service; the fact that the proof of service filed with the court violated section 1013a, since it was dated two days earlier than the postmark (§ 1013a, subd. (3)); and the course of dealing regarding the earlier agreement to dismiss.

The late filing, was, of course, the fault itself, and does not bear any hallmark of deliberate tactic, rather than of mistake. The flaws in the service seem to support, rather than to contradict, the claim of mistake. Moreover, while Chua refers to "appellant's" conduct, there is no indication that appellant himself had anything to do with any of these errors. The facts regarding the agreement to dismiss are, of course, potentially far more serious, and might subject appellant to sanctions. However, while it was apparent from the court's comments at summary judgment that the court was familiar with these events, our record reflects no request for sanctions based on this conduct. This conduct does not establish that appellant's late reply to summary judgment was the result of deliberate tactic, rather than counsel's "mistake, inadvertence, surprise, or neglect."

Finally, we quote the final sentence of the mandatory provisions of section 473: "The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties." We expect that the trial court here will make such an order on remand.

### Disposition

We reverse the order denying appellant's application for relief pursuant to Code of Civil Procedure section 473 and the orders granting summary

judgment to respondents, and remand the action to the trial court for decision of the motions for summary judgment and for other proceedings consistent with this opinion. Each party to bear its own costs on appeal.

Grignon, Acting P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied October 7, 1997, and respondents' petition for review by the Supreme Court was denied December 17, 1997.