Filed 1/26/21  Tricoast Builders v. Lakeview Loan Servicing CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TRICOAST BUILDERS, INC., | B297960 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC056615) |
| v. | |
| LAKEVIEW LOAN SERVICING, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

Connette Law Office and Michael T. Connette for Plaintiff and Appellant.

Houser, Robert W. Norman, Jr., and Timothy A. Schneider for Defendants and Respondents.

_____

Plaintiff and appellant TriCoast Builders, Inc. (TriCoast) appeals from a judgment entered in favor of defendants and respondents Lakeview Loan Servicing, LLC (Lakeview) and Cenlar FSB (Cenlar) (collectively defendants) following the trial court's order sustaining a demurrer without leave to amend as to two causes of action and order granting summary judgment on the remaining two causes of action. TriCoast also appeals from a postjudgment order in which the court declined to set aside the order granting summary judgment. TriCoast contends that the court erred by (1) sustaining defendants' demurrer without leave to amend; (2) not ordering a continuance of the hearing on defendants' motion for summary judgment or, in the alternative, summary adjudication; and (3) not setting aside the order granting summary judgment.

We affirm.

## FACTUAL BACKGROUND[1]

Nathaniel Fonnegra (Fonnegra) was the owner of a residential property located in Santa Clarita (property). On December 20, 2013, Fonnegra executed a promisory note for $372,000 in favor of Bankers Xpress, LLC. The note was secured by a deed of trust for the property, which was executed on December 20, 2013, and recorded on December 27, 2013.

---

[1] The underlying facts summarized in this section are taken from the pleadings, evidence submitted in support of defendants' motion for summary judgment/adjudication, and points of agreement in the parties' appellate briefs. The summary is provided for context only. We resolve the specific issues raised by TriCoast on appeal based on the allegations in the second amended complaint and relevant procedural matters that are summarized in the procedural background section, *infra.*

In May 2014, the property was damaged by a fire. The insurer of the property issued a check for repairs, which was endorsed over to the servicer or subservicer of Fonnegra's loan, Pacific Union Financial, LLC (Pacific Union). In June 2014, Fonnegra entered into a contract with TriCoast, a general building contractor, for the provision of construction services, labor, and materials to repair the property.

When the job was 65 percent complete, Pacific Union inspected TriCoast's work and, in early July 2015, issued a check for $43,641.50 payable to TriCoast and Fonnegra. Because Fonnegra did not endorse the check over to TriCoast, the check eventually went stale. According to TriCoast, it received "assurances of payment" by Fonnegra and G.D. Baca, Inc. (public adjuster) and continued its work on the property until it was about 85 percent complete. The contract between Fonnegra and TriCoast was terminated by Fonnegra on or about July 17, 2015. On September 3, 2015, TriCoast recorded a mechanic's lien against the property in the amount of $99,805.05. The lien was recorded after TriCoast had ceased its work under the contract.

Meanwhile, on or about July 16, 2015, Pacific Union transferred Fonnegra's loan and $27,343.54 in insurance proceeds to defendants, with Lakeview as the servicer and Cenlar as the subservicer.[2] Pacific Union held back $43,641.50 of the insurance proceeds to cover the check it had issued to Fonnegra and TriCoast. After that check went stale, Pacific Union transferred the $43,641.50 to defendants.

---

[2] According to TriCoast, Lakeview was also the servicer of the loan prior to July 16, 2015, with Pacific Union as the subservicer.

3

In January and March 2016, Cenlar issued checks in the amounts of $40,000 and $30,985.04 to Fonnegra and his new contractor, Whitehouse Construction, Inc. (Whitehouse).

## PROCEDURAL BACKGROUND

### I. The Operative Complaint

In the operative second amended complaint, TriCoast asserted four causes of action against defendants: foreclosure of mechanic's lien, tortious interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.[3]

The foreclosure of mechanic's lien cause of action was based on allegations that defendants "may" have had "some right, title, or interest" in the property, but that such claims were "subject and subordinate to" TriCoast's lien.

The basis for the interference causes of action was that defendants disrupted Fonnegra's performance of his contract with TriCoast by knowingly issuing a check to Fonnegra's new

---

[3]    In addition to these causes of action against defendants, TriCoast asserted the cause of action for foreclosure of mechanic's lien against Fonnegra; the causes of action for tortious interference with contractual relations and intentional interference with prospective economic advantage against the public adjuster, Whitehouse, and Pacific Union; and the cause of action for negligent interference with prospective economic advantage against the public adjuster and Pacific Union. TriCoast also asserted causes of action for breach of contract and for reasonable value of services rendered and goods provided against Fonnegra. Fonnegra, Pacific Union, Whitehouse, and the public adjuster are not parties to this appeal.

4

contractor, Whitehouse, for work completed by TriCoast, instead of reissuing the check that had gone stale to TriCoast.[4]

## II. Demurrer

Defendants demurred under Code of Civil Procedure section 430.10, subdivision (e),[5] to the causes of action for intentional and negligent interference with prospective economic advantage. They argued that TriCoast failed to allege the existence of a future economic benefit, wrongful conduct by defendants, or that defendants owed a duty to TriCoast.

The trial court sustained defendants' demurrer to both causes of action, reasoning that TriCoast failed to allege that it "was likely to derive some future, rather than past, economic benefit or advantage from its relationship with . . . Fonnegra." TriCoast had alleged that "the relationship between [TriCoast] and Fonnegra terminated on [July 17, 2015]" but did not allege that defendants caused the termination. The court concluded that TriCoast also failed to allege that defendants' conduct "was wrongful in some way other than the interference itself" and noted that "[t]he allegation that [defendants] acted wrongfully is . . . belied by the allegation that [defendants] were deceived by . . . Whitehouse . . . into paying funds to Whitehouse for work completed by [TriCoast]." According to the court, the cause of action for negligent interference with prospective economic advantage was deficient for the additional reason that TriCoast

---

[4]     TriCoast also alleged, however, that the public adjuster and Whitehouse conspired to create false estimates to deceive defendants.

[5]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

"failed to allege facts to establish that [defendants] owed it a duty."

"Because it d[id] not appear that the defects in these causes of action [could] be cured by amendment," the trial court sustained the demurrer without leave to amend.

## III. Summary Judgment

### A. Defendants' motion

Defendants moved for summary judgment or, in the alternative, summary adjudication, directed to the remaining causes of action for foreclosure of mechanic's lien and tortious interference with contractual relations.

Defendants argued that no triable issue of fact existed as to the foreclosure of mechanic's lien cause of action because the lien serviced by defendants—in the form of the deed of trust—had priority over TriCoast's mechanic's lien. No triable issue of fact existed as to the tortious interference with contractual relations cause of action because (1) the contract between TriCoast and Fonnegra was terminated three months before defendants' alleged conduct occurred and thus "there was no contractual relationship for [defendants] to disrupt or sever"; (2) even if the contract was still in place, defendants' alleged conduct did not disrupt it; and (3) defendants did not cause TriCoast's damages.

### B. TriCoast's opposition

In its opposition to defendants' motion, TriCoast argued that defendants lacked standing to contest the priority of TriCoast's mechanic's lien because defendants had not provided evidence regarding who was the current holder of the deed of trust to the property.

As to tortious interference with contractual relations, TriCoast asserted that its contract with Fonnegra was not

6

actually terminated on July 17, 2015; rather, Fonnegra breached the contract but was still obligated to pay for work that had been completed by TriCoast. Defendants disrupted the contract by paying Whitehouse for work completed by TriCoast, causing TriCoast to suffer damages.

TriCoast's opposition papers—consisting of a memorandum of points and authorities, a separate statement of undisputed material facts, a declaration of TriCoast's counsel (who was also a director of the corporation), and a declaration of TriCoast's president—were filed electronically. No exhibits were filed concurrently with the opposition papers.

C. <u>The trial court's ruling</u>

On March 1, 2019, the trial court issued a minute order granting summary judgment in defendants' favor. As a preliminary matter, the court noted that TriCoast had failed to provide courtesy copies of its opposition papers. The court had nevertheless considered TriCoast's electronically filed documents. "However, the exhibits referred to in the opposition were not attached to any of the electronically filed opposition papers."

Regarding the foreclosure of mechanic's lien cause of action, the trial court rejected TriCoast's argument that defendants lacked standing to contest priority; if defendants did not have standing, the court reasoned, the cause of action should not have been asserted against them. Additionally, because the deed of trust serviced by defendants was recorded before the entry of the contract between TriCoast and Fonnegra and before TriCoast's mechanic's lien was recorded, defendants' lien had priority.

Regarding the tortious interference with contractual relations cause of action, the trial court noted that the second amended complaint alleged the termination of the contract on or

7

about July 17, 2015, and that TriCoast was attempting to improperly "create a triable issue of material fact by contradicting" its own allegations by claiming that the contract continued after that date. "The evidence establishe[d] that no contractual relationship existed between [TriCoast] and . . . Fonnegra for [defendants] to sever or disrupt at the time they issued the check to . . . Fonnegra and Whitehouse . . . on [January 19, 2016]." The court also found that the evidence showed that defendants did not cause TriCoast's claimed damages.

On March 20, 2019, judgment was entered in favor of defendants.

## IV. TriCoast's Motion for Reconsideration

On March 15, 2019, TriCoast moved under sections 1008 and 473 for reconsideration of or, in the alternative, for relief from the trial court's order granting summary judgment. TriCoast argued that, based on excusable neglect, it failed to electronically file 20 exhibits in support of its opposition to defendants' motion for summary judgment/adjudication and that some of those exhibits would have been "sufficient to show facts claimed to be undisputed are in fact disputed." TriCoast sought discretionary relief under section 473, subdivision (b), which provides that "'[t]he court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.'"

The trial court denied TriCoast's motion on the ground that, following the entry of judgment, the court had lost jurisdiction.

8

## V. Appeal

TriCoast timely appealed from the judgment and the order after judgment.

## DISCUSSION

## I. Demurrer

TriCoast first contends that the trial court erred by sustaining defendants' demurrer to the causes of action for intentional and negligent interference with prospective economic advantage without leave to amend.

### A. Standards of review

When a demurrer is sustained without leave to amend, we apply two separate standards of review. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.) "We first review the complaint de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law. [Citation.] Second, we determine whether the trial court abused its discretion by sustaining the demurrer without leave to amend. [Citation.] Under both standards, appellant has the burden of demonstrating that the trial court erred. [Citation.] An abuse of discretion is established when 'there is a reasonable possibility the plaintiff could cure the defect with an amendment.'" (*Ibid.*)

### B. Relevant law

"'The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition.'" (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 429.)

9

The elements of tortious interference with prospective economic advantage are (1) the existence of an economic relationship between the plaintiff and a third party having a probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional or negligent independently wrongful act designed to disrupt the relationship; (4) disruption of the relationship; and (5) damages. (*Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1404–1405 (*Crown Imports*).)[6]

The independently wrongful element means "that a plaintiff seeking to recover damages for interference with prospective economic advantage must plead as an element of the claim that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1142 (*Ixchel*).) "'[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.'" (*Ibid.*)

"The independently wrongful act must be the act of interference itself, but such act must *itself* be independently wrongful. That is, '[a] plaintiff need not allege the interference and a second act independent of the interference. Instead, a plaintiff must plead and prove that the conduct alleged to constitute the interference was independently wrongful, i.e.,

---

[6]     "The difference between intentional interference and negligent interference with prospective economic advantage relates to the defendant's intent." (*Crown Imports, supra,* 223 Cal.App.4th at p. 1404, fn. 10.) Because defendants' intent is not relevant to our analysis, we treat the two causes of action for intentional and negligent interference with prospective economic advantage the same.

unlawful for reasons other than that it interfered with a prospective economic advantage. [Citations.]'" (*Crown Imports*, *supra*, 223 Cal.App.4th at p. 1404.)

C. Analysis

1. *Failure to allege an independently wrongful act*

To state a cause of action for both intentional and negligent interference with prospective economic advantage, TriCoast was required to allege that defendants' interference was independently wrongful—"'. . . that is, . . . proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.'" (*Ixchel*, *supra*, 9 Cal.5th at p. 1142.) TriCoast contends that it sufficiently pled this element by alleging that defendants disrupted TriCoast's relationship with Fonnegra by issuing a check to Fonnegra's new contractor, Whitehouse, for work completed by TriCoast. According to TriCoast, these actions "are indicative of wrongful conduct" and that "such conduct is not a customary or industry practice, nor just, nor consistent with common law." TriCoast argues that this conduct constitutes the cause of action for tortious interference with contractual relations, which is a wrongful act independent from the interference with prospective economic advantage.

We cannot agree.

Although pled separately, the alleged interference giving rise to the cause of action for tortious interference with contractual relations is the same as the interference giving rise to the causes of action for intentional and negligent interference with prospective economic advantage: Defendants interfered with Fonnegra's performance of his contract with TriCoast by issuing a check made out to Fonnegra and Whitehouse instead of to Fonnegra and TriCoast for work completed by TriCoast. In

11

other words, the interference with contractual relations is not independent from the interference with prospective economic advantage; the interference in each cause of action shares the same "interfering character." (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 944.)

Indeed, we are aware of no authority that stands for the proposition that interference with contractual relations can serve as an independently wrongful act to state a cause of action for interference with prospective economic advantage. To the extent that TriCoast relies on *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134 (*Korea Supply*) to support such a contention, its reliance is misplaced.

In that case, the California Supreme Court reiterated that intentional interference with contract and intentional interference with prospective economic advantage are distinct torts. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1157.) Unlike interference with contract, interference with prospective economic advantage does not require the existence of a valid contract. (See *id.* at pp. 1157–1158.) The other significant distinction between the torts is that "a plaintiff that chooses to bring a claim for interference with prospective economic advantage has a more rigorous pleading burden since it must show that the defendant's conduct was independently wrongful." (*Id.* at p. 1158.) In contrast, interference with contract *does not* require that the defendant engaged in an independently wrongful act, because "while intentionally interfering with an existing contract is 'a wrong in and of itself' [citation], intentionally interfering with a plaintiff's prospective economic advantage is not." (*Ibid.*) *Korea Supply* did not address whether interference with contract satisfies the independently wrongful element for a

12

cause of action for interference with prospective economic advantage based on the same conduct. "[I]t is axiomatic that a decision does not stand for a proposition not considered by the court [citation]." (*People v. Barker* (2004) 34 Cal.4th 345, 354.)

Because TriCoast failed to allege facts showing that defendants "engaged in an act that is wrongful apart from the interference itself" (*Korea Supply*, *supra*, 29 Cal.4th at p. 1154), a required element of intentional and negligent interference with prospective economic advantage, the trial court properly sustained defendants' demurrer as to those causes of action.[7]

2. *Leave to amend*

TriCoast "bears the burden of proving there is a reasonable possibility of amendment." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) To do so, it "must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, [it] must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." (*Id.* at pp. 43–44.)

---

[7] Because the demurrer was properly sustained on this basis, we need not and do not address whether the trial court could also sustain the demurrer because TriCoast failed to allege a future economic benefit or advantage through its relationship with Fonnegra or, as to negligent interference, failed to allege that defendants owed a duty to TriCoast. (See *Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 549 ["We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling"].)

13

TriCoast has not met its burden.  It "identifies no determinable legal standard proscribing" (*Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 842) defendants' alleged interference with prospective economic advantage other than defendants' alleged interference with contractual relations and, thus, fails to demonstrate how it can cure the pleading deficiencies.  There is no basis to find an abuse of discretion.

## II.  Continuance of Hearing

TriCoast next argues that the trial court erred by not continuing, pursuant to section 437c, subdivision (h), the hearing on defendants' motion for summary judgment/adjudication.

A.  <u>Standard of review</u>

We review a trial court's decision regarding a continuance under section 437c, subdivision (h), for an abuse of discretion. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100.)  "Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered."  (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 (*Connolly*).)

B.  <u>Relevant law</u>

Section 437c, subdivision (h), provides:  "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just.  The application to continue the motion to obtain necessary discovery may also be made by

14

ex parte motion at any time on or before the date the opposition response to the motion is due."

The declarations of the party seeking the continuance must show: "'(1) "Facts establishing a likelihood that controverting evidence may exist and why the information sought is essential to opposing the motion"; (2) "The specific reasons why such evidence cannot be presented at the present time"; (3) "An estimate of the time necessary to obtain such evidence"; and (4) "The specific steps or procedures the opposing party intends to utilize to obtain such evidence."'" (*501 East 51st Street, Etc. v. Kookmin Best Ins. Co., Ltd.* (2020) 47 Cal.App.5th 924, 939 (*501 East 51st Street*).)

"When a party makes a good faith showing by affidavit demonstrating that a continuance is necessary to obtain essential facts to oppose a motion for summary judgment, the trial court must grant the continuance request." (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1428.) Otherwise, the court *may*, but is not required, "to grant a continuance under its broad discretionary power." (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 533 (*Johnson*).)

C. <u>Analysis</u>

TriCoast never requested a continuance of the hearing on the motion for summary judgment/adjudication. Accordingly, the trial court did not err in not ordering one. (See *Farmer Bros. Co. v. Franchise Tax Bd.* (2003) 108 Cal.App.4th 976, 993 ["A party on appeal cannot successfully complain because the trial court failed to do something which it was not asked to do"].)

TriCoast nevertheless contends that the trial court was required to continue the hearing based on the declaration submitted by TriCoast's counsel in support of its opposition to the

15

motion for summary judgment/adjudication because the declaration "referenc[ed]" facts and evidence "that existed but [were] not presented." The argument is meritless. The declaration of TriCoast's counsel did not state any reason why facts essential to justify the opposition were not presented, as required for mandatory relief under section 437c, subdivision (h). (*501 East 51st Street*, *supra*, 47 Cal.App.5th at p. 939.)

In the alternative, TriCoast argues that even if it did not submit an affidavit in compliance with section 437c, subdivision (h), the trial court should have continued the hearing "under its broad discretionary power." This argument is incongruous. (*Agricultural Labor Relations Bd. v. Laflin & Laflin* (1979) 89 Cal.App.3d 651, 666, fn. 16 ["It would be both inappropriate and futile for us to attempt to review for abuse a discretion the court was never requested to exercise and did not purport to exercise"].) It has also been forfeited. (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1366 ["Because [the appellant's] counsel never requested a continuance . . . , we consider the argument forfeited"].) Even putting those issues aside, the argument lacks merit.

Pursuant to the California Rules of Court, "[t]he electronic filer is responsible for verifying that the court received and filed any document that the electronic filer submitted to the court electronically." (Cal. Rules of Court, rule 2.259(a)(4).) "In the absence of the court's confirmation of receipt and filing, there is no presumption that the court received and filed the document." (*Ibid.*) Accordingly, the responsibility for verifying that the exhibits in support of its opposition to defendants' motion for summary judgment/adjudication were properly filed—and thus before the trial court—fell squarely, and exclusively, on TriCoast.

TriCoast also failed to submit the required printed courtesy copies of its opposition papers, including its exhibits, in violation of a general order of the Los Angeles County Superior Court.

Under these circumstances, the trial court did not err in failing to continue the hearing on the motion for summary judgment/adjudication.

## III. Relief from the Order Granting Summary Judgment

TriCoast moved for reconsideration under section 1008 of the order granting summary judgment and, in the alternative, argued that the order should be set aside under the discretionary relief provision of section 473, subdivision (b).  On appeal, TriCoast does not assert that the trial court erred by denying its request for reconsideration or by denying discretionary relief to set aside the order granting summary judgment.[8]  Rather, it contends that it was entitled to *mandatory* relief under section 473, subdivision (b).  TriCoast argues:  "There is great liberality in granting relief from an attorney's mistake, inadvertence, surprise or excusable neglect.  Indeed, such relief is mandatory under . . . [s]ection 473(b)[.]"

A.  <u>Relevant law and standard of review</u>

"When lawyers make mistakes," section 473, subdivision (b), provides both a discretionary and a mandatory form of relief. (*Shayan v. Spine Care & Orthopedic Physicians* (2020) 44 Cal.App.5th 167, 170 (*Shayan*).)  As set forth above, only the mandatory relief aspect of this statute is at issue.

---

[8]     Any challenge to these aspects of the ruling has been forfeited.  (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 ["Plaintiff has not raised this issue on appeal . . . , and it may therefore be deemed waived"].)

Under the mandatory relief provision, a trial court is required to vacate a default, default judgment, or dismissal if, among other procedural requirements, an attorney files a "sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect" that resulted in the default, default judgment, or dismissal, "unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b).) Only a narrow category of orders is covered by the mandatory relief provision—"defaults, default judgments, and dismissals." (*Shayan*, *supra*, 44 Cal.App.5th at p. 170.)[9]

"'[I]f the prerequisites for the application of the mandatory provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief.' [Citation.] Thus, to the extent that the applicability of the mandatory relief provision does not turn on disputed facts, but rather, presents a pure question of law, it is subject to de novo review." (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399.)

B. <u>Analysis</u>

TriCoast's argument is deficient in several respects.

As a threshold matter, TriCoast failed to argue in the trial court that it was entitled to mandatory relief under section 473, subdivision (b), thus forfeiting the argument on appeal. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117.)

Forfeiture aside, TriCoast's argument lacks merit. Because TriCoast did not seek relief from a default, default judgment, or

---

[9] The discretionary relief provision is applicable to a broader range of orders. (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438.)

18

dismissal within the meaning of section 473, subdivision (b), the mandatory relief provision was inapplicable. (*English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 133 (*English*) ["the mandatory provision of section 473(b) does not apply to summary judgments because a summary judgment is neither a 'default,' nor a 'default judgment,' nor a 'dismissal' within the meaning of section 473(b)"].)

Urging us to reverse, *TriCoast* directs us to *Avila v. Chua* (1997) 57 Cal.App.4th 860 (*Avila*), which concluded that the mandatory relief provision in section 473, subdivision (b), applied to a dismissal following a grant of summary judgment because the dismissal was "directly analogous to a default judgment: Due to counsel's late filing of crucial documents, the court decided the matter on the other parties' pleadings." (*Avila*, *supra*, at p. 868.) Numerous appellate courts—constituting the weight of authority—have disagreed with *Avila* and, instead, followed the holding of *English*, *supra*, 94 Cal.App.4th at pages 142–149. (E.g., *The Urban Wildlands Group, Inc. v. City of Los Angeles* (2017) 10 Cal.App.5th 993, 998–1001; *Las Vegas Land & Development Co., LLC v. Wilkie Way, LLC* (2013) 219 Cal.App.4th 1086, 1090–1092; *Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 226–228; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1415–1418; *Prieto v. Loyola Marymount University* (2005) 132 Cal.App.4th 290, 295–297.) As TriCoast has not provided us reason to do otherwise, we, too, follow *English* and its progeny.

Finally, for the sake of completeness, we note that even if TriCoast could establish that the trial court erred in denying relief under section 473, subdivision (b), it has not demonstrated prejudice, which is ultimately fatal to its appeal. (*In re S.C.*,

19

*supra*, 138 Cal.App.4th at p. 422 ["appellant cannot prevail on a claim of error if she makes no effort to establish that she was prejudiced by the alleged error"].)  In seeking reversal, TriCoast "bears the duty of spelling out in [its] brief exactly how the error caused a miscarriage of justice."  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 (*Paterno*).)  To do so here, TriCoast was required to show that, had the trial court set aside the order granting summary judgment and reevaluated defendants' motion for summary judgment/adjudication, the exhibits that TriCoast had previously failed to file would have defeated the motion.[10]

TriCoast has not made a sufficient showing.  TriCoast states, in conclusory fashion, that the exhibits "evidenc[e] several disputed facts, particularly the disputed fact that . . . Lakeview received servicing rights on July 16, 2016."[11]  But TriCoast has not presented any argument or authority explaining how those purportedly disputed facts would have necessarily precluded summary judgment.  We are "not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno, supra,* 74 Cal.App.4th at p. 106.)

---

[10]     As the party moving for summary judgment, defendants bore an initial burden of production to make a prima facie showing that there was no triable issue of material fact.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  TriCoast does not argue that defendants failed to meet their initial burden. We treat this as a concession that the burden of production shifted to TriCoast to make a prima facie showing that a triable issue of material fact did indeed exist.  (*Ibid.*)

[11]     Given the context, TriCoast likely meant July 16, 2015.

## DISPOSITION

The judgment and postjudgment order are affirmed.
Lakeview and Cenlar are entitled to costs on appeal.
<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

21