Filed 5/14/26  Potts v. Kern County Hospital Authority CA5

## <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JASMINE POTTS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>KERN COUNTY HOSPITAL AUTHORITY,<br><br>    Defendant and Respondent. | F089927<br><br>(Super. Ct. No. BCV-24-101925)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the nonpublished opinion filed herein on April 24, 2026, be modified as follows:

On page 17, the last sentence of the paragraph under the heading "**DISPOSITION**" beginning with "KCHA" and ending with "costs on appeal" is deleted in its entirety and replaced with the following sentence and footnote 10:

KCHA is entitled to its costs on appeal.[1]

Except for the modification set forth above, the opinion previously filed remains unchanged.  This modification does not effect a change in the judgment.

Appellant Potts's petition for rehearing filed on April 27, 2026, is denied.

---

[1]    We express no opinion as to whether the trial court may consider appellant's ability to pay in awarding allowable costs on appeal.

DE SANTOS, J.

WE CONCUR:

DETJEN, Acting P. J.

MEEHAN, J.

Filed 4/24/26  Potts v. Kern County Hospital Authority CA5 (unmodified opinion)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JASMINE POTTS,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>KERN COUNTY HOSPITAL AUTHORITY,<br><br>  Defendant and Respondent. | F089927<br><br>(Super. Ct. No. BCV-24-101925)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Jasmine Potts, in pro. per., for Plaintiff and Appellant.

Hall Hieatt Connely & Bowen and Jay A. Hieatt, for Defendant and Respondent.

-ooOoo-

Plaintiff and appellant Jasmine Potts, who was self-represented below and is self-represented on appeal, filed a first amended complaint against Kern County Hospital Authority (KCHA) (erroneously sued as Kern Medical Center and its outpatient clinics), among other defendants.  Potts challenges on appeal, a trial court ruling denying her motion to strike KCHA's general denial to the FAC as well as her related request for entry of default as to KCHA.  Potts also challenges a trial court ruling granting KCHA's motion for judgment on the pleadings.  We affirm.

## FACTS AND PROCEDURAL HISTORY

***The Operative Complaint***

On June 11, 2024, Potts filed a civil complaint in the Kern County Superior Court against multiple defendants. On July 3, 2024, Potts filed a first amended complaint (FAC), which is the operative complaint in this matter. The FAC named as defendants, Kern Medical Center and its outpatient clinics (the correct entity for purposes of suit is KCHA); Kern Allergy Medical Clinic; Laboratory Corporation of America Holdings; and WestPac, Labs, Inc.

The FAC alleged that starting in March 2024, Potts and her children sought medical care because "she was sick, as were her children, and [she] suspected it was due to mold in her apartment." Potts initially obtained medical care for herself and her children at KCHA's facilities. Eventually, Potts sought and obtained specialist allergy care at a separate entity, Kern Allergy Medical Clinic, for all four of her children, "for suspected mold exposure."

With respect to KCHA, the FAC alleged that, on March 10, 2024, Potts had an initial visit with a nurse practitioner at Kern Medical Center, a KCHA facility. Potts explained she was sick from suspected mold exposure. "Her symptoms were documented, and she was treated with Loratadine and Fluticasone, and an allergy panel was ordered."

The FAC added: "[Potts] completed the allergy panel screening on May 12, 2024. On May 26, 2024, at a follow-up visit, [the nurse practitioner], provided the results. [Potts] indicated that she has consumed walnuts and peanuts daily without any issues throughout her entire life. [The nurse practitioner] advised her to continue consuming them and referred her to the Kern Allergy Specialist for further investigation."

The FAC further alleged: "On March 20, 2024, [Potts's daughter Po. G.] was seen at Kern Medical Children's Clinic for a same-day triage appointment for coughing due to mold exposure. [Dr. Aiylam Paramewaran] verbally stated he was treating [Po. G.] for

2.

mycotoxins with Zithromax.  However, the discharge paperwork incorrectly stated that [Po. G.] came in for a well-child checkup and was treated for pneumonia.  Blood screening and chest X-rays were performed.  [Potts] requested an allergy panel, but the doctor denied the request, stating it was unnecessary.  At a follow-up on March 29, [2024] [Dr. Paramewaran] stated he had treated [Po. G.] for microplastics, not mycotoxins."

The FAC continued:  "On March 20, 2024, [Potts's daughter Pe. G.] was also seen at Kern Medical Children's Clinic for coughing due to mold exposure. [Dr. Paramewaran] ordered a blood test and chest X-ray but denied [Potts's] request for an allergy panel, stating it was unnecessary."

The FAC added that Potts ultimately took her children to an urgent care facility, which provided referrals for her children to Kern Allergy Medical Clinic.  Potts thereafter took her children to Kern Allergy Medical Clinic.  She also took her children for blood allergy tests at WestPac Labs, Inc.  As noted, Kern Allergy Medical Clinic and WestPac Labs, Inc., are also defendants in this matter.  The FAC contained additional factual allegations concerning Kern Allergy Medical Clinic and WestPac Labs, Inc.  Those allegations are not relevant to this appeal.

The FAC asserted seven causes of action; however, it did not specify to which defendant or defendants each cause of action pertained.  The causes of action alleged violations of, respectively, (1) Health and Safety Code sections 123100 to 123149.5 (full chapter:  patient access to health records); (2) Business and Professions Code section 2266 (requiring preservation of medical records by physicians and surgeons for seven years); (3) Civil Code section 56 (entire Confidentiality of Medical Information Act (CMIA)); (4) Business and Professions Code section 810 (prescribing disciplinary action for false or fraudulent claims by healthcare professionals); (5) Civil Code section 1710 (deceit); (6) Penal Code section 471.5 (codifying misdemeanor offense of falsifying

3.

medical records with fraudulent intent); and (7) California Code of Regulations, title 22, section 70707 (requiring hospitals to adopt and publicly post list of patients' rights).

The FAC's prayer for relief requested, inter alia, "compensatory damages in an amount to be determined at trial"; "punitive damages in an amount sufficient to punish Defendant [*sic*] for their wrongful conduct and deter future misconduct"; and "injunctive relief requiring Defendant [*sic*] to comply with all applicable laws and regulations governing medical records and patient rights."

On November 8, 2024, Potts filed a proof of service indicating she had served the original complaint and related summons on KCHA (the record does not disclose when service was made).[2] On December 3, 2024, Potts filed a proof of service indicating she had served the FAC on KCHA.[3] In any event, on November 15, 2024, KCHA had filed a general denial to the FAC.[4]

On February 20, 2025, Potts filed a motion to strike KCHA's general denial and a request for entry of default. On March 14, 2025, the trial court denied Potts's motion to strike general denial and request for entry of default.

On April 28, 2025, KCHA filed a motion for judgment on the pleadings (MJOP). Potts filed an opposition. KCHA filed a reply. On May 28, 2025, the trial court granted KCHA's motion for judgment on pleadings.

This appeal followed.

---

[2]     The proof of service is noted on the trial court's register of actions but does not appear in the record.

[3]     Again, the record does not disclose when service was made. The proof of service is noted on the trial court's register of actions but does not appear in the record.

[4]     KCHA's general denial clarified that it had been "erroneously sued as Kern Medical Center, including its outpatient clinics." (Capitalization omitted.)

## DISCUSSION

I.   **THE TRIAL COURT PROPERLY DENIED POTTS'S MOTION TO STRIKE KCHA'S GENERAL DENIAL AND REQUEST FOR ENTRY OF DEFAULT**

As noted, KCHA filed its general denial to Potts's FAC on November 15, 2024. Thereafter, on February 20, 2025, Potts filed a motion to strike KCHA's general denial and a request for entry of default. The trial court denied Potts's motion to strike and request for entry of default. The court's order states, in totality, "Motion to Strike General Denial and Request for Entry of Default by Plaintiff is denied."

Potts challenges the trial court's ruling. Potts argues the trial court erred in denying her motion to strike/request for entry of default because she had not been properly served with KCHA's general denial. We are not persuaded by Potts's contentions and affirm.

### A.   *Background*

The record shows that KCHA first attempted to file a general denial to the FAC on October 17, 2024. On October 17, 2024, KCHA also served the general denial on Potts via email. The email, with the general denial and an attached October 17, 2024 proof of service, is in the record on appeal. However, on October 18, 2024, the trial court rejected KCHA's filing on grounds of nonconformity between the filing party's name as reflected in the general denial and the parties listed in the FAC, because the FAC erroneously referred to KCHA as "Kern Medical Center, including its outpatient clinics."

Upon the trial court's rejection of the general denial on October 18, 2024, KCHA attempted to refile the general denial several more times, but it was again rejected on October 21, 2024, November 6, 2024, and November 13, 2024, for the same reason. Once KCHA's counsel's office understood the reason underlying the rejections, the general denial's caption was corrected, and the general denial was properly filed on November 15, 2024. However, KCHA's counsel's staff filed the general denial on

5.

November 15, 2024, with the original proof of service dated October 17, 2024, and did not re-serve the general denial on Potts on the basis that its substance was unchanged.

On February 7, 2025, Potts filed a request for entry of default. Potts states in her opening brief that a trial court clerk declined to enter the default based on KCHA's previously filed general denial and its associated proof of service dated October 17, 2024.[5] On February 13, 2025, KCHA's counsel informed Potts in a phone call that KCHA had filed a general denial on November 15, 2024. Potts in turn called the trial court clerk, who confirmed the general denial was on file.

Nonetheless, Potts followed up on February 20, 2024, with a motion to strike the general denial and a request for entry of default. Potts stated in her papers that she did not receive the October 17, 2024 email in which KCHA served her with the *original*, miscaptioned general denial (that was submitted for filing to the court that same day). Potts clarified that she received other emails from KCHA's counsel's office in October and November 2024, but not the October 17, 2024 email. However, all the emails were sent to the same email address, that is, the address for Potts on file with KCHA's counsel.

On February 27, 2024, KCHA's counsel again called Potts to explain matters; Potts confirmed in the call that she had already obtained a file-stamped copy of the general denial from the trial court.

On March 14, 2024, the trial court denied Potts's motion to strike the general denial and request for entry of default.

### B.      Analysis

Potts argues she was entitled to take KCHA's default on February 7, 2025, because KCHA's service of its general denial on her was defective. She further argues

---

[5]      Potts notes in her opening brief that a trial court clerk verbally told her, on February 7, 2025, that no responsive pleading had been filed in the case. However, Potts also states that when she sought entry of default on February 7, 2025, the court clerk declined to enter default given that KCHA's general denial was on file.

the trial court should have struck KCHA's general denial for defective service and granted her request for entry of default.

Code of Civil Procedure section 585 makes clear that a default may only be entered against a defendant when no responsive pleadings have been filed with the trial court. (See Code Civ. Proc., § 585, subds. (a), (b).) Here, the trial court properly denied Potts's request for entry of default because KCHA's general denial was filed in the court on November 15, 2024, well before Potts sought to take KCHA's default.[6] Furthermore, the fact that the general denial was on file was brought to Potts's attention *before* she filed her motion to strike general denial and request for entry of default, and KCHA's counsel appeared at the hearing thereon. Therefore, there was no basis for the court to strike the general denial for purposes of entering a default against KCHA. (See, e.g., *Lorenz v. Commercial Acceptance Ins. Co.* (1995) 40 Cal.App.4th 981, 997-998 ["[T]he policy of the law … does not favor default."]; *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1364 (*Elkins*) [recognizing the " ' "*strong policy favoring the disposition of cases on their merits*," ' " italics in original].)

Potts's reliance on potential technical defects in the service of KCHA's general denial on her is unavailing, because Potts was in receipt of a file-stamped copy of the general denial at the time she filed her motion to strike the general denial and request for entry of default. (See *Elkins*, *supra*, 41 Cal.4th at p. 1364 [" ' "Judges routinely reject requests by counsel to function solely in a ministerial capacity." ' "]; *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1161 ["An order based upon a curable

---

**6** The record does not disclose the applicable timeline for filing a responsive pleading to the FAC. In any event, the important fact is that KCHA's general denial was filed on November 15, 2024, before any application for default was made. (See *Goddard v. Pollock* (1974) 37 Cal.App.3d 137, 141 ["it is now well established by the case law that where a pleading is belatedly filed, but at a time when a default has not yet been taken, the plaintiff has, in effect, granted the defendant additional time within which to plead and he is not strictly in default."].)

procedural defect … which effectively results in a judgment against a party, is an abuse of discretion."].)

In addition, the record reflects that the trial court denied Potts's motion to strike the general denial and request for entry of default, at least in part, on grounds it was not served on KCHA. The register of actions indicates the denial was based, at least in part, on lack of service of the motion, and documents subsequently filed with the court by KCHA similarly indicate the court denied the motion for lack of proper service.[7] Potts did not secure a reporter's transcript of the hearing on her motion to strike/request for entry of default. "It is the appellant's affirmative duty to show error by an adequate record." (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 [appellant failed to secure a hearing transcript].) Moreover, a " 'necessary corollary to this rule [is] that a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed.' " (*Ibid*.) Here, we cannot evaluate this aspect of the court's ruling.

In sum, Potts has not shown the trial court erred in denying her motion to strike KCHA's general denial and request for entry of default.

## II. THE TRIAL COURT PROPERLY GRANTED KCHA'S MOTION FOR JUDGMENT ON THE PLEADINGS

Potts next challenges the trial court's ruling granting KCHA's motion for judgment on the pleadings. We affirm.

---

[7] A proof of service indicating the motion was electronically served by Potts appears in the record; however, the validity of the service is unclear in the absence of a complete record, including the reporter's transcript of the motion hearing.

### A. Applicable Legal Framework

"A motion for judgment on the pleadings has the same function as a general demurrer but is made after the time for demurrer has expired." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (2021 ed.) ¶ 7:275; *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 452 ["A motion for judgment on the pleadings is the functional equivalent of a general demurrer."]; *Alameda County Waste Management Authority v. Waste Connections US, Inc.* (2021) 67 Cal.App.5th 1162, 1173-1174 (*Alameda County*) ["A motion for judgment on the pleadings is similar to a demurrer in most respects."].)

Like a demurrer, we review de novo a trial court's ruling on a motion for judgment on the pleadings. (*Alameda County*, *supra*, 67 Cal.App.5th at p. 1173.) "Except as provided in the statute governing motions for judgment on the pleadings, Code of Civil Procedure section 438, the rules governing demurrers apply." (*Id.* at p. 1174.) "Like a demurrer, a motion for judgment on the pleadings attacks defects disclosed on the face of the pleadings or by matters that may be judicially noticed." (*Ibid.*; Code Civ. Proc., § 438, subd. (d).) The motion is warranted when the complaint, or a claim therein, fails to state sufficient facts to constitute a cause of action against the defendant. (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) " 'A motion for judgment on the pleadings may be made at any time prior to trial or at the trial itself.' " (*Stoops v. Abbassi* (2002) 100 Cal.App.4th 644, 650.)

### B. Background

As noted, KCHA filed a motion for judgment on the pleadings on April 28, 2025. Potts filed an opposition. KCHA filed a reply. On May 28, 2025, the trial court heard argument on the motion. Following argument, the court adopted its tentative ruling granting the motion, without leave to amend.

The trial court's tentative ruling, adopted as its final ruling, provided that the motion for judgment on the pleadings was granted on grounds of standing, as well as on

the merits. As to standing, the court ruled: "Ms. Potts is the only named plaintiff in this action. There are no allegations of any wrongdoing involving her own legal rights and interests, and she has no right to relief on the legal rights or interests of third parties, including those of her children." With respect to the merits, the court ruled: "Independent of standing, [Ms. Potts] fails to state any cause of action against KCHA."

### C. Analysis

#### (i) Jurisdiction

Potts first argues: "Because KCHA never validly appeared [in this action], the trial court lacked jurisdiction to entertain or grant its motion [for judgment on the pleadings]." Potts adds: "The resulting judgment is void and must be reversed." Potts further posits that, to the extent "judgment was entered on an unserved pleading," it violates due process. However, these contentions are unavailing because, as discussed above, KCHA filed a general denial on November 15, 2024, and the trial court properly declined to strike the general denial.

#### (ii) Evidence

Potts further argues that the trial court improperly granted KCHA's motion for judgment on the pleadings because KCHA did not offer any evidence in support of its motion. This contention is, however, also unavailing because the grounds for a motion for judgment on the pleadings must appear on the face of the challenged pleading or be based on facts which the court may judicially notice. (Code Civ. Proc., § 438, subd. (d); *Alameda County*, *supra*, 67 Cal.App.5th at p. 1174.) Here, the court properly ruled on the motion for judgment on the pleadings based on the face of the pleadings.

#### (iii) Standing

Potts next argues that three of the claims asserted in the FAC constituted properly pleaded causes of action and, therefore, the trial court erroneously granted KCHA's motion for judgment on the pleadings. Specifically, Potts contends that the FAC properly states causes of actions under Health and Safety Code section 123120 (access to health

10.

records), Civil Code section 56 (CMIA), and Civil Code section 1710 (deceit).  As discussed below, we disagree.

Preliminarily, we note the trial court found that Potts did not have standing to assert claims on behalf of her children.  Specifically, the court ruled that Potts "has no right to relief on the legal rights or interests of third parties, including those of her children."  Potts, in her opening brief, does not address or challenge the court's ruling on this point.  Since the issue of standing was not raised or briefed, Potts has forfeited any challenge to the court's determination that she could not bring any claims in relation to her children's treatment at KCHA facilities.  (*Limon v. Circle K Stores, Inc*. (2022) 84 Cal.App.5th 671, 687 [" 'Issues not raised in an appellant's brief are deemed waived or abandoned,' " quoting *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6].)  The court's ruling on this point therefore stands.

### (iv)    Health and Safety Code Section 123120

Potts's claim that the FAC states a cause of action under Health and Safety Code section 123120 (access to health records), fails.  As to this claim, KCHA responds: "Although [Potts] cites the entire chapter of statutes initially in her FAC, [she] now acknowledges that only [Health and Safety Code] Section 123120 grants a private right of action to enforce a violation of [Health and Safety Code] Section 123110, which provides for a patient's access to inspection and copying of their medical records." KCHA continues:  "Assuming this statute applies, [Potts] has not factually alleged that KCHA thwarted her access to inspect and obtain a copy of her own medical records." KCHA adds:  "The Trial Court confirmed that [Potts] has no right to relief on the legal rights or interests of third parties, including those of her children, who are the basis of her claim."

For purposes of our analysis, we assume without deciding that Health and Safety Code section 123120 establishes a private right of action to enforce violations of Health

11.

and Safety Code section 123110.[8]  Under Health and Safety Code section 123110, subdivision (a), medical providers must, *upon request*, permit inspection of medical records.

We agree with KCHA that the FAC does not allege that Potts requested and was denied access to *her own* medical records by KCHA providers; Potts's opening brief appears to concede as much.  In turn, we conclude the FAC does not allege sufficient facts to state a cause of action under Health and Safety Code section 123120.

To the extent Health and Safety Code sections 123120 and 123105, subdivision (e)(1), permit Potts to personally bring an action based on denial of a request to inspect her minor children's medical records, this avenue is also not available to Potts.[9]  The FAC does not allege that Potts submitted a request to KCHA to inspect her children's medical records and that KCHA denied her request to inspect the records.  Accordingly, even assuming Potts has standing to bring a claim regarding her children's medical records under Health and Safety Code sections 123110, subdivision (a), 123105, subdivision (e)(1), and 123120, the FAC does not allege facts sufficient to state a cause of action thereunder.[10]

---

[8]      Health and Safety Code section 123120 provides that "[a]ny patient or representative" aggrieved by a violation of Health and Safety Code section 123110 may "bring an action against the health care provider to enforce the obligations prescribed by [Health and Safety Code section] 123110."

[9]      As noted, Health and Safety Code section 123120 provides that "[a]ny patient or representative" aggrieved by a violation of Health and Safety Code section 123110 may "bring an action against the health care provider to enforce the obligations prescribed by [Health and Safety Code section] 123110."  Health and Safety Code section 123105, subdivision (e)(1) defines " 'representative' " as, among other things, "[a] parent or guardian of a minor who is a patient."

[10]      In her briefs, Potts does not assert she was denied access, upon request, to her children's medical records.  Rather, she contends she has the "right to request amendments" to her children's "inaccurate records."  She has not shown that Health and Safety Code sections 123120 and 123110 are applicable for this purpose.

12.

### (v)    Civil Code Section 56, et seq.

Potts's claim that the FAC alleges sufficient facts to state a cause of action under Civil Code section 56 (CMIA) is similarly unavailing. With respect to this claim, KCHA responds: "[Potts] alleges that each defendant violated California Civil Code section 56 by failing 'to provide accurate medical information and the concealment of serious illnesses.'" KCHA adds: "[Potts] cited the entire Confidentiality of Medical Information Act, which contains numerous code provisions regarding medical information and its disclosure. Generally, Civil Code section 56 [et seq.] prohibits a health care provider from disclosing medical information regarding a patient without first obtaining an authorization. In that way, it protects medical patients' right to privacy in their personal medical information. (*Brown v. Mortenson* (2011) 51 Cal.4th 1052, 1070-1071.)" KCHA continues: "As there are no facts alleging KCHA improperly disclosed confidential medical information, it was appropriate for the trial court to grant [KCHA's] motion for judgment on the pleadings."

Here, the FAC does not allege that KCHA providers improperly disclosed or otherwise mishandled Potts's personal medical information; nor does Potts have standing to bring claims based on the interests of her children. Accordingly, we conclude the FAC does not allege facts sufficient to state a cause of action pursuant to the CMIA (Civ. Code, § 56 et seq.). (See *Brown v. Mortenson*, *supra*, 51 Cal.4th at p. 1070 [the CMIA "'is intended to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider'"].)

### (vi)    Civil Code Section 1710

Potts's claim that the FAC alleges sufficient facts to state a cause of action under Civil Code section 1710 (deceit), also fails. Potts asserts that the FAC alleges that her child's treating physician at a KCHA facility made conflicting statements about the child's diagnosis and, further, the child's medical records were inconsistent with the

13.

treating physician's statements, which facts are sufficient to state a claim for intentional misrepresentation under Civil Code section 1710.

KCHA responds:  "The elements of intentional misrepresentation 'are (1) a misrepresentation … (3) intent to induce reliance … and (5) resulting damage[.]' *Aton Ctr., Inc. v. United Healthcare Ins. Co*. [(2023) 93 Cal.App.5th 1214, 1245]."  KCHA suggests Potts has not alleged facts showing reliance or any damages.  KCHA adds: "Finally, as the [t]rial [c]ourt found, [Potts] has no right to relief concerning the legal rights or interests of third parties, including those of her children [citation].  [Potts's] claim relies on the legal interests of her children, who are not plaintiffs in this matter." We agree with KCHA that Potts does not have standing to bring a claim for intentional misrepresentation on behalf of her children and that the FAC does not allege sufficient facts to state a claim for intentional misrepresentation on her own behalf.  We therefore conclude the trial court properly granted KCHA's motion for judgment on the pleadings as to this claim.

### (vii)    Intentional Infliction of Emotional Distress

Potts also contends that the FAC alleges facts sufficient to state a claim for intentional infliction of emotional distress (IIED); the FAC did not include a claim for IIED.  "A cause of action for intentional infliction of emotional distress exists when there is ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)  "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' " (*Id*. at pp. 1050-1051.)  "And the defendant's conduct must be ' " 'intended to inflict injury or engaged in with the realization that injury will

result.' " ' " (*Id*. at p. 1051.)  Liability " ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." ' " (*Ibid.*)

In short, "[w]ith respect to the requirement that the plaintiff show severe emotional distress, [our Supreme Court] has set a high bar.  'Severe emotional distress means "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." ' " (*Hughes v. Pair*, *supra*, 46 Cal.4th at p. 1051.)  Here, the only facts alleged in the FAC as to Potts herself describe a relatively routine visit with a nurse practitioner at Kern Medical Center.  Furthermore, the FAC does not allege that Potts suffered emotional harm based on the visit.  Accordingly, we conclude the FAC does not allege facts sufficient to state a cause of action for IIED.

### (viii)   Leave to Amend

Potts does not challenge in her opening brief, the trial court's denial of leave to amend.  She has therefore forfeited any argument that the court abused its discretion in denying leave to amend.  In any event, it is Potts's "burden to show 'that the trial court abused its discretion' [in denying leave to amend] and 'show in what manner [she] can amend [her] complaint and how that amendment will change the legal effect of his pleading.' " (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 668.)  Potts has not met that burden.

### (ix)    Miscellaneous

Potts makes a "cumulative error" argument that is misplaced and without merit, and we need not further address it.

KCHA also argues, relying on Government Code section 911.2 and 945.4, that KCHA is a public entity and therefore any lawsuit against it is subject to government claim presentation requirements.  KCHA contends:  "Neither the FAC [nor] the [opening brief] allege compliance with the government claim presentation requirements, or even make any mention of *a government tort claim* … [and] therefore, each cause of action

15.

against KCHA is subject to dismissal." (Italics added.) However, in light of our disposition in this matter, we need not address KCHA's arguments with respect to the application of government claim presentation requirements here.

### (x) Appealability

Potts filed her notice of appeal directly from the trial court's May 28, 2025 ruling granting KCHA's motion for judgment on the pleadings, before a judgment of dismissal in favor of KCHA was entered. Code of Civil Procedure section 438, subdivision (h)(3) provides: "If [a motion for judgment on the pleadings] is granted with respect to the entire complaint … without leave to file an amended complaint … then judgment shall be entered forthwith in accordance with the motion granting judgment to the moving party." Here, the clerk's transcript does not contain a judgment (see Cal. Rules of Court, rule 8.122(b)(1)(B)); nor does the register of actions included in the record on appeal reflect that judgment was entered. Accordingly, we must presume no judgment was entered. (See *Connell v. Superior Court* (1997) 59 Cal.App.4th 382, 392 ["An appealable judgment or order is a jurisdictional prerequisite to an appeal"]; Code Civ. Proc., § 904.1 [an order granting a motion for judgment on the pleadings is not appealable].)

Potts's attempt to appeal from a nonexistent judgment does not require dismissal of the appeal. The merits of the appeal have been fully briefed by both parties and no prejudice to KCHA would result from considering the merits. Under these circumstances, " '[t]o dismiss the appeal 'merely to have a judgment formally entered below with a new appeal would be a useless waste of judicial and litigant time.' " (*Donohue v. State of California* (1986) 178 Cal.App.3d 795, 800 (*Donohue*).) Accordingly, we order the trial court to enter, nunc pro tunc as of the date of the order granting KCHA's motion for judgment on the pleadings, a judgment dismissing the action as to KCHA, and we construe the notice of appeal to refer to such judgment. (See *Donohue* at p. 800; *Coe v. City of Los Angeles* (1994) 24 Cal.App.4th 88, 91, fn. 3.)

16.

## **DISPOSITION**

The trial court is directed to enter, nunc pro tunc as of May 28, 2025, a judgment dismissing the action as to Kern County Hospital Authority. The judgment is affirmed. KCHA is awarded its costs on appeal.

DESANTOS, J.

WE CONCUR:

DETJEN, Acting P. J.

MEEHAN, J.

17.